2022–1044, 2022-1045, 2022-1084

United States Court of Appeals
for the Federal Circuit

LAITRAM, LLC,

*Appellant,*

v.

ASHWORTH BROS., INC.,

*Cross Appellant.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Inter Partes Review Nos. IPR2020-00593 and IPR2020-00594

# CROSS APPELLANT'S PRINCIPAL AND RESPONSE BRIEF

Robert F. Altherr, Jr.
John R. Hutchins
Christopher B. Roth
BANNER & WITCOFF, Ltd.
1100 13th Street, NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824–3000

*Attorneys for Cross Appellant Ashworth Bros., Inc.*

**U.S. Patent No. 10,023,388, Claim 9**

9. A spiral conveyor comprising:

> a drive tower extending from a bottom to a top and rotating about a vertical axis;
>
> a plurality of parallel drive members extending in length from the bottom to the top of the drive tower;
>
> wherein each of the drive members includes an outwardly projecting ridge whose distance from the vertical axis varies from the bottom to the top of the drive tower; and
>
> wherein each drive member includes a lower segment at the bottom of the drive tower and wherein the ridge in the lower segment is tapered along a portion of its length;
>
> a conveyor belt positively driven without slip on a helical path around the drive tower by the ridges of the drive members engaging an inside edge of the conveyor belt.

**U.S. Patent No. 10,023,388, Claim 10**

10. A spiral conveyor as in claim 9 wherein the distance of the ridge from the vertical axis in the lower segment is constant below the portion that is tapered.

**U.S. Patent No. 10,023,388, Claim 11**

11. A spiral conveyor comprising:

> a drive tower extending from a bottom to a top and having a vertical axis of rotation;
>
> a plurality of parallel drive members extending in length from the bottom to the top of the drive tower;
>
> wherein each of the drive members includes a ridge projecting radially outward to an outer edge;

wherein each of the drive members includes a lower segment at the bottom of the drive tower and an upper segment extending from the lower segment toward the top of the drive tower;

wherein the distance of the outer edge of the ridge from the vertical axis of rotation is a first distance in the upper segment and the distance of the outer edge of the ridge from the vertical axis of rotation is a greater second distance in a lower portion of the lower segment;

a conveyor belt positively driven on a helical path around the drive tower by the ridges of the drive members engaging an inside edge of the conveyor belt.

**U.S. Patent No. 10,189,645, Claim 1**

1. A spiral conveyor comprising:

a drive tower extending from a bottom to a top and rotatable about a vertical axis;

a plurality of parallel drive members extending in length on the periphery of the drive tower from the bottom to the top;

wherein the parallel drive members angle outwardly away from the vertical axis toward the bottom in a lower portion of the drive tower;

a conveyor belt positively driven without slip in a helical path around the drive tower by the drive members engaging an inside edge of the conveyor belt.

**U.S. Patent No. 10,189,645, Claim 3**

3. A spiral conveyor comprising:

a drive tower extending from a bottom to a top and rotatable about a vertical axis and including a plurality of parallel drive members extending in length on the periphery of the drive tower from the bottom to the top;

wherein the drive members include outwardly projecting ridges whose distance from the vertical axis varies away from the top to the bottom of the drive tower;

wherein the distance of the ridges from the vertical axis increases toward the bottom in a lower portion of the drive tower;

a conveyor belt positively driven without slip in a helical path around the drive tower by the ridges engaging an inside edge of the conveyor belt.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2022-1044, 2022-1045, 2022-1084

**Short Case Caption** Laitram, LLC v. Ashworth Bros., Inc.

**Filing Party/Entity** Appellee and Cross-Appellant / Ashworth Bros., Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/09/2022

Signature: /s/ Robert F. Altherr, Jr.

Name: Robert F. Altherr, Jr.

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Ashworth Bros., Inc. | | Ashworth International, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Laitram, L.L.C., and Intralox v. Ashworth Bros., Inc., C.A. No 19-1130-LPS ( D. Del.) | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

STATEMENT OF RELATED CASES .......... xiv

JURISDICTIONAL STATEMENT .......... xiv

STATEMENT OF THE ISSUES .......... 1

INTRODUCTION .......... 4

STATEMENT OF THE CASE .......... 8

I. THE PATENTS AT ISSUE .......... 9

II. SUMMARY OF THE PRIOR ART .......... 10

A. The Prior Art Describes Spiral Conveyor Systems Positively Driven Without Slip .......... 10

B. The Prior Art Describes a Ridge Tapered Along a Portion of Its Length .......... 16

III. THE BOARD'S FINAL WRITTEN DECISIONS .......... 17

A. Pupp and Roinestad2 Describe Positively Driven Without Slip .......... 17

B. Ridge Tapered along a Portion of its Length .......... 22

C. Motivation to Combine .......... 24

1. Pupp and Roinestad .......... 24

2. Roinestad 2 and Roinestad .......... 25

D. Claims 9 and 10 of the '388 Patent .......... 26

SUMMARY OF ARGUMENT .......... 29

ARGUMENT .......... 32

IV. STANDARD OF REVIEW .......... 32

V. THE BOARD DID NOT ERR IN CONSTRUING "WITHOUT SLIP" ..... 34

A. The Board Correctly Construed "Without Slip" ..... 34

B. Skilled Artisans Understood that a Positive Drive "Without Slip" Did Not Use Overdrive to Drive the Belt ..... 36

C. The Board Correctly Understood the Meaning of "Without Slip" with Regard to Positive Drive Systems ..... 39

D. The Board Did Not Read "Without Slip" Out of the Claims ..... 40

VI. MULTIPLE PRIOR ART REFERENCES TEACH POSITIVE DRIVE "WITHOUT SLIP" ..... 43

A. Roinestad2 Teaches Positive Drive Without Slip ..... 44

B. Laitram Has Forfeited Any Arguments That Roinestad2 Lacks Positive Drive Without Slip ..... 46

C. Pupp Discloses Positive Drive Without Slip ..... 48

D. The Board Did Not Rely Upon the Doctrine of Inherency ..... 51

1. The Board Correctly Applied Pupp's Teachings to a POSITA in Considering Obviousness and Did Not Rely on Inherency ..... 51

VII. THE BOARD CORRECTLY CONSTRUED A RIDGE "TAPERED ALONG A PORTION OF ITS LENGTH" BASED ON THE INTRINSIC EVIDENCE ..... 54

A. The "Tapered" Region of the Ridge Does Not Refer Only to Portions of the Ridge in Which its Height Changes ..... 54

VIII. THE BOARD CORRECTLY FOUND THAT A POSITA WOULD HAVE BEEN MOTIVATED TO COMBINE THE TEACHINGS OF THE PRIOR ART TO OBTAIN THE KNOWN AND PREDICTABLE BENEFIT OF REDUCED TENSION AFFECTING THE CONVEYOR BELT..........................57

A. Substantial Evidence Supports the Board's Finding a Motivation to Combine Roinestad with Roinestad2 or Pupp..........................58

1. The Board's Analysis Regarding a POSITA's Motivation to Combine Roinestad2 and Roinestad Applied the Correct Legal Standard and Its Conclusions Are Supported by Substantial Evidence..........................58

2. The Board's Analysis Regarding a POSITA's Motivation to Combine Pupp and Roinestad Applied the Correct Legal Standard and Its Conclusions Are Supported by Substantial Evidence..........................60

IX. ASHWORTH'S CROSS-APPEAL..........................62

A. The Board Erred in Finding that Petitioner Failed to Demonstrate that Claim 10 was Obvious over Pupp and Roinestad and Failed to Demonstrate that Claims 9 and 10 were Obvious over Roinestad2 and Roinestad..........................62

1. Pupp and Roinestad Render Dependent Claim 10 Obvious..........................65

2. Roinestad2 and Roinestad Render Claims 9 and 10 Obvious..........................68

X. CONCLUSION..........................70

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016) ....................20

*Atlas Powder Co. v. Ireco, Inc.*,
190 F.3d 1342 (Fed. Cir. 1999) ....................52

*EWP Corp. v. Reliance Universal Inc.*,
755 F.2d 898 (Fed. Cir. 1985) ....................69

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ....................46

*In re Applied Materials, Inc.*,
692 F.3d 1289 (Fed. Cir. 2012) .................... 28, 32, 33, 67

*In re Burckel*,
592 F.2d 1175 (CCPA 1979) ....................52

*In re Cuozzo Speed Techs., LLC*,
793 F.3d 1268 (Fed. Cir. 2015) ....................33

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) ....................33

*In re Heck*,
699 F.2d 1331 (Fed. Cir. 1983) .................... 28, 67

*In re Jolley*,
308 F.3d 1317 (Fed. Cir. 2002) ....................51

*In re Lamberti*,
545 F.2d 747 (CCPA 1976) ....................52

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ....................33

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*In re NTP, Inc.*,
654 F.3d 1279 (Fed. Cir. 2011) .......... 32, 51

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) .......... 48

*Koninklijke Philips N.V. v. Google LLC*,
948 F.3d 1330 (Fed. Cir. 2020) .......... 19, 20

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) .......... 5, 33, 60

*L.E.A. Dynatech, Inc. v. Allina*,
49 F.3d 1527 (Fed. Cir. 1995) .......... 47

*Meiresonne v. Google, Inc.*,
849 F.3d 1379 (Fed. Cir. 2017) .......... 32

*Merck & Co. v. Biocraft Labs., Inc.*,
874 F.2d 804 (Fed. Cir. 1989) .......... 68

*Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*,
868 F.3d 1013 (Fed. Cir. 2017) .......... 35

*Outdry Tech. Corp. v. Geox S.p.A.*,
859 F.3d 1364 (Fed. Cir. 2017) .......... 33, 58

*PAR Pharm., Inc. v. TWI Pharm., Inc.*,
773 F.3d 1186 (Fed. Cir. 2014) .......... 51

*Personal Web Techs., LLC v. Apple, Inc.*,
848 F.3d 987 (Fed. Cir. 2017) .......... 32

*Qualcomm Inc. v. Intel Corp.*,
6 F.4th 1256 (Fed. Cir. 2021) .......... 43

*Wyers v. Master Lock Co.*,
616 F.3d 1231 (Fed. Cir. 2010) .......... 33, 58

**STATUTES**

35 U.S.C. § 103(a) .......... 33

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

5 U.S.C. § 706(2)(A) ..........32

5 U.S.C. § 706(2)(E) ..........32

## STATEMENT OF RELATED CASES

No appeal in or from the same action was previously before this or any other appellate court.

This Court's decision here may directly affect a pending case in the United States District Court for the District of Delaware, captioned *Laitram, L.L.C. v. Ashworth Bros., Inc.*, No. 1:19-cv-01130, where Laitram asserts Ashworth infringes U.S. Patent Nos. 10,023,388 and 10,189,645. The district court case was stayed pending the final disposition of the two IPRs appealed in this case.

## JURISDICTIONAL STATEMENT

The Board had jurisdiction under 35 U.S.C. §§6, 311-319, and entered final written decisions in Nos. IPR2020-00593 and IPR2020-00594 on August 23, 2021. Appx00001-00129 and Appx00130-00250, respectively. Ashworth Bros., Inc.'s cross-appeal, filed October 22, 2022, was timely under 35 U.S.C. §142 and 37 C.F.R. §90.3(a)(1). This Court has jurisdiction under 28 U.S.C. §1295(a)(4)(A).

## STATEMENT OF THE ISSUES

**Laitram's Appeal**

1. Whether the Board correctly construed "without slip" in accordance with the intrinsic evidence as "a system in which there is essentially no slip between the conveyor belt and the drive tower," with the proper understanding that "there is no slip as in overdrive systems," (Appx00015, Appx00143, Appx00251-00265, at Appx00262 (1:41-45), Appx00263 (4:11-15), and Appx00265 (7:3-7); and Appx00266-00280, at Appx00277 (1:55-59), Appx00278 (4:28-32), and Appx00280 (7:21-25)) ("positively drives a conveyor belt without overdrive") and correctly found the prior art disclosed positive drive without slip.

2. Whether substantial evidence supports the Board's correct finding that Pupp (1) expressly disclosed to one of ordinary skill in the art positive drive without slip; and (2) correctly rejected Laitram's expert Mr. Straight's testimony that Pupp only disclosed "a friction drive system that has no friction and thus does not drive the tower at all," as not supported by the record. Appx00042-00046, Appx00156-00160, Appx02424, and Appx02095-02097 at 188:19-190:14.

3. Whether Laitram has forfeited its present challenge to the Board's findings with respect to Roinestad2 by failing to even raise the argument in its Patent Owner's Responses that combinations utilizing Roinestad2 did not meet the claim elements [11G] ("positively driven") and [9F], [1E], and [3E] ("positively driven without slip"). Appx00906-00911, Appx01560-01564.

4. Whether substantial evidence supports the Board's correct finding of a motivation to combine Roinestad's tapered surface which reduced friction and belt tension with positive drive systems where both expressly recognized that reducing tension affecting the belt was beneficial, and there were a limited number of design options for the drive tower surface, i.e., straight, tapered, or both; the references are all in the same field of endeavor as the patents at issue (Appx00051-00063, Appx00086-00087, Appx00110-00117, Appx00165-00177, Appx00192-00195, Appx00202-00204, Appx00220-00231, and Appx00239-00240); and Laitram's expert Mr. Straight admitted that it was known in the prior art to use a tapered surface to reduce belt tension and a POSITA would want that benefit for a positive drive spiral conveyor. Appx02429, Appx02137-02138 at 230:23-231:10.

5. Whether the board correctly construed the '388 patent claim 9 term "tapered along a portion of its length" in view of all of the intrinsic evidence

rather than unduly limit its construction to the single embodiment of FIGs 2A and 2B contrary to Laitram's counsel's assertion at the Oral Hearing that "claim nine is more like figure 17." Appx01865.

**<u>Ashworth's Cross-Appeal</u>**

6. Whether the Board erred in finding that Petitioner had not proven by a preponderance that claims 9 and 10 of the '388 patent were obvious over Roinestad2 and Roinestad and had not proven by a preponderance that claim 10 was obvious over Pupp and Roinestad, by applying only the teachings of Roinestad's Fig. 1 embodiment, rather than the teaching of Roinestad as whole. (Appx00555, Fig. 1, Appx00563, Fig. 11, and App00564, Fig. 12)

## INTRODUCTION

Claims 9-13 of the ‘388 Patent and claims 1-4 of the ‘645 Patent (collectively “the challenged claims” of “the patents at issue”)[1] are directed to simple spiral conveyor systems. The named inventors of the patents at issue were not the first to invent positive drive without slip in a spiral conveyor system and were not the first to utilize tapered shapes on the drive tower of a spiral conveyor system to reduce tension affecting the belt. Well before the alleged invention of the patents at issue, prior-art spiral conveyor patents and publications described the same claimed components and their benefits (positive drive without slip and a tapered shape to reduce tension affecting the belt).

Employing positive drive without slip in spiral conveyors was well within the level of ordinary skill in the art long before the earliest filing date of the patents at issue as evidenced by many prior art patents disclosing positive drive without slip by using regularly-spaced structures on the drive tower that positively engage an inside edge of the conveyor belt. See, e.g., Appx02426-02427, Appx02332-02407. Pupp and Roinestad2 are two such prior art references. Particularly, Pupp disclosed that such prior art positive drive systems were the usual solution for solving

---

[1] The only limitations at issue in these appeals are the six (6) claim limitations identified in Appellant’s Br. 9-10, *i.e.*, [9D], [9E], [9F], and [11G] of the ‘388 Patent and [1E] and [3E] of the ‘645 Patent. Dependent claim 10 is also at issue in Ashworth’s cross-appeal.

problems associated with circumferential friction in spiral conveyors. This type of drive system was different from the other well-known type of drive system, friction drive. Friction drive utilized friction between the conveyor belt and a faster moving drum to drive the conveyor belt causing overdrive or slip between the drive drum and the conveyor belt. In positive drive systems utilizing structure on the drive tower to engage the inner edge of the conveyor belt at regular spaced locations around the drive tower, however, "there is no slip as in overdrive systems." Appx00262 at 1:41-45, Appx00277 at 1:55-59.

Additional prior art (e.g., Roinestad) also disclosed that there were essentially three design options for spiral conveyor drive tower shapes. They could be: (1) cylindrical in shape; (2) conical in shape, *i.e.*, having surfaces that were tapered from the axis of rotation; or (3) mixed cylindrical and tapered sections. Appx00555, Fig. 1, Appx00558, Fig. 5, Appx00563, Fig. 11, Appx00564, Fig. 12. This prior art also disclosed that a tapered surface provided the advantage of reducing stress affecting the belt. Appx00571 at 12:53-66, Appx00571-00572 at 12:75-13:3, Appx00572 at 13:59-64; and Appx00566 at 1:63-65.

The challenged claims of the patents at issue thus are the classic obvious "combination which only unites old elements with no change in their respective functions." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415-16 (2007). In light of

Pupp, Roinestad2, Roinestad and the other prior art, the challenged claims should never have issued. Pupp, Roinestad2 and Roinestad were not substantively considered by the PTO during the initial prosecution of the challenged claims. In these IPRs, these strong prior art references were substantively considered for the first time. In response, Laitram responded with mischaracterizations and omissions of the full teaching of these prior art references to a person of ordinary skill in the art ("POSITA") and argued that such a person would not be motivated to combine the teaching of references in the same field of endeavor and disclosing different solutions to the limited number of drive systems and shapes of spiral conveyor drive towers to address the common need for reduction in tension and stress affecting the conveyor belt.

After considering what a POSITA understood from the prior art, the Board saw through these mischaracterizations and omissions, and did not make the errors urged by Laitram. Instead, the Board correctly construed the limitations of the challenged '388 Patent claims, and correctly invalidated claims 9 and 11-13 of the '388 Patent as obvious based on the combination of Pupp and Roinestad, and claims 11-13 of the '388 Patent as obvious based on the combination of Roinestad2 and Roinestad. Similarly, the Board correctly construed the limitations of the '645 Patent claims, which are very similar to the claims of the '388 patent; and correctly

invalidated claims 1-4 of the ‘645 Patent as obvious based on the combination of Pupp and Roinestad and the combination of Roinestad2 and Roinestad.

On appeal, Laitram first argues that the Board misconstrued “without slip.” Appellant’s Br. 24-36. Laitram complains that, in determining that Pupp and Roinestad2 meet the claim limitations requiring a positive drive without slip, the Board allegedly failed to appreciate that these references taught positive drives with slip. Laitram thus concludes that the Board must have improperly held that every positive drive necessarily operates without slip. *Id.* However, Laitram never argued in its Patent Owner Responses that either Pupp or Roinestad2 taught positive drives with slip, and has forfeited those arguments. The Board properly applied the claim limitations to the references and properly addressed the arguments Laitram actually raised.

Laitram also complains that the Board improperly held that Pupp teaches positive drive and that there was no motivation to combine Roinestad2 or Pupp with Roinestad (*Id.* 36-53), but in so doing, Laitram simply fails to acknowledge the full teachings of the references, the creativity of the skilled artisan, and the discretion of the Board to credit Ashworth’s evidence over that of Laitram’s.

Laitram also argues that the Board improperly applied an overly broad construction of the term “tapered.” *Id*. at 53-61. However, the Board’s construction

is fully supported by the intrinsic evidence of record. Further, Laitram's new argument that only FIGs 2A and 2B are relevant to construing the term "tapered" directly contradicts what Laitram's counsel asserted during the oral hearing before the Board. Appx01865.

The Board erred only in allowing claim 10 of the '388 patent to stand and in not finding claims 9 and 10 of the '388 patent invalid in view of Roinestad2 and Roinestad. With respect to these claims, the Board incorrectly limited its consideration of what a POSITA would have understood from Roinestad's disclosure to the teachings of a single embodiment (i.e., Appx00555, Fig. 1), rather than considering the teachings of Roinestad as a whole, including the Fig. 11 (Appx00563) and Fig. 12 (Appx00564) embodiment as well as the Fig. 1 (Appx00555) embodiment. Accordingly, the Board's Final Written Decision findings that Petitioner had not proven claims 9 and 10 of the '388 patent obvious over Roinestad2 and Roinestad and had not proven claim 10 obvious over Pupp and Roinestad should be reversed and all other findings of the Final Written Decisions affirmed.

## STATEMENT OF THE CASE

A significant portion of Laitram's Statement of the Case is not accurate. For example, Laitram asserts, without citation, that Ashworth "infringes the '388 and '645 patents." Appellant's Br. 11. But Laitram neglects to mention that there never

has been any finding of infringement of either the ‘388 or ‘645 patents. Laitram’s district court litigation against Ashworth was stayed pending the IPRs at issue in this appeal. Ashworth has its own patents covering its positive drive spiral conveyor products and Ashworth does not infringe the ‘388 and ‘645 patents. Nearly every paragraph of Laitram’s statement contains similarly incorrect or irrelevant assertions. Ashworth will not attempt to address each of them herein, but instead will focus only on those factual issues actually pertinent to the current appeal.

## I. THE PATENTS AT ISSUE

The patents at issue describe a positively driven spiral conveyor with a taper along its outer surface along the height of the drive tower. Appx00262 at 1:52-2:3; Appx00277 at 1:65-2:20. With respect to the tapering of the outer surface of the spiral conveyor, Laitram is now seeking an overly-narrow construction of “tapered” that relies only on a single embodiment of the claims, the embodiment directed to FIGs 2A and 2B of the patents at issue. (Appellant’s Br. 53-61) In that one embodiment, the tapered portion refers to a change in the height of the ridge on the tower’s drive members, and Laitram argues other embodiments, which the Board also considered important in reaching its decision, are irrelevant. *Id*. These include: (1) FIGs 4A and 4B in which “the ridge tapers” and “tapering” are described as “[t]he decreasing height of the ridge 28 or its distance from the drive tower’s vertical axis” (Appx00035-00036, citing Appx00263 at 4:2-10); and (2) the tapered ridge on

FIGs 17 and 18 in which the usage of "tapered" aligns with the change in distance from the outer surface of the "ridge" to the axis of rotation of the drive tower, but does not align with the change in height along the length of the ridge. Appx00037-00038, citing Appx00264 at 6:53-62 ("FIG. 17 has a cylindrical upper portion 182 and a skirt portion 184 th[at] tapers outwardly away from the tower's vertical axis…FIG. 18 has… [a] tapered portion 197") which the '388 Patent further describes this ridge of the drive members engaging the inside edge of the belt. Appx00265 at 7:3-7 ("the spiral conveyors of FIGS. 11-18… with drive members that engage the inside edge of the belt with a ridge.").

## II. SUMMARY OF THE PRIOR ART

Before the alleged invention of the '388 and '645 patents, it was well known to a POSITA and the prior art of record included descriptions of (1) "positive drive without slip", and (2) a spiral conveyor drive tower with a "ridge tapered along a portion of its length". In arguing to the contrary, Laitram largely ignores those portions of the prior art that undermine its argument.

### A. The Prior Art Describes Spiral Conveyor Systems Positively Driven Without Slip

The patents at issue were not the first to disclose positive drive without slip. It was well within the level of ordinary skill in the art long before Laitram's patents'

earliest filing date. Some of those prior art positive drive systems, which were well within the level of ordinary skill in the art, included:

**<u>U.S. Patent No. 8,362,764 (Johnson)</u> (Appx02332-02362)**




*FIG. 44*




*FIG. 45*

Appx02352-02354, Figs. 42-47, Appx02358 at 5:55-62, Appx02359 at 8:18-22 and 8:41-44, and Appx02360 at 9:1-6 ("FIGS. 44-47 illustrate various styles of conveyor belts **positively driven along the inner and outer helical paths**.") (emphasis added);

**<u>U.S. Patent No. 4,944,162 (Lang)</u> (Appx02363-02376)**




FIG. 5

Appx02364, FIG. 1, Appx02367, FIG. 5, Appx02371 at 3:28-34, and Appx02373 at 7:31-52 ("**drive elements 32** located about its circumference **which engage the inboard or inner edge of the conveyor belt 20 so as to positively drive the conveyor belt**") (emphasis added);

**<u>G.B. Patent No. 1,377,498</u> (Appx02377-02386)**




Appx02386, FIGs. 7 and 8, Appx02377 at 1:65-70, Appx02378 at 2:5-10 and 2:37-42, Appx02379 at 3:121-126, Appx02380 at 4:19-22, and Appx02381 at 5:21-27 ("This positioning of the angles provides effective **positive engagement with the inner edge of the belt ensuring that the belt will be driven smoothly and without slippage**.") (emphasis added); and

**<u>U.S. Patent No. 4,852,720 (Roinestad '720)</u> (Appx02387-02407)**







Appx02391, FIG. 4, Appx02392, FIGs. 5 and 8, and Appx02400 at 2:23-26 and 2:52-55 ("The bars have radial driving surfaces overlapping and abutting and in **positive driving relationship with the rod heads which are spaced along the radially inner edge of the belt in the helical loops**.") (emphasis added).

See also Appx02426-02427.

Pupp (Appx00542-00549), like the background section of the '388 and '645 Patents, discloses that the usual solution in the prior art to eliminate friction in the circumferential direction (and thereby lessen stress affecting the belt) was to use positive drive without slip specifically "by a positive engagement between the drum and the inside of the conveyor belt along the helical path." Appx00547 at 1:30-33. Contrary to Laitram's assessment of Pupp (Appellant's Br. 12), the background section of Pupp is not the sole description of positive drive without slip in Pupp and Pupp is not silent on the type of drive used in its spiral conveyor system. In addition to the above, Pupp discloses positive drive without slip to a POSITA, in its Figures

and in the "Detailed Description of the Preferred Embodiment(s) of the Invention" section of its specification. Appx00544, FIG 5, Appx00545, FIG 8, and Appx00548 at 3:3-8 ("[i]t will be appreciated that if the conveyor belt 2 in FIG 1 makes contact with the outside of the drum 1, it will, while moving along the helical path, accompany, without friction, the drum 1 in the circumferential direction around the drum, merely if the contact between the drum 1 and the conveyor belt 2 involves a driving engagement."). See also Appx00544, FIG 5 and Appx00545, FIG 8. To one of ordinary skill in the art, the language of Pupp's "Detailed Description of the Preferred Embodiment(s) of the Invention," i.e., "accompany, without friction, the drum 1 in the circumferential direction" and "driving engagement" are clear references to the "prior art solutions have coped with the circumferential friction only, usually by a positive engagement between the drum and the inside of the conveyor belt," i.e. positive drive with no slip as in overdrive systems. Appx01337-01338, ¶ 83, Appx00630-00631, ¶ 83, Appx00976-00977, ¶ 13, Appx01628-01629, ¶ 13.

To put these disclosures of Pupp in context as they would be understood by a POSITA, both Laitram's expert Mr. Straight and Ashworth's expert Mr. O'Keefe testified that to a POSITA "without slip" is a "reference to a spiral conveyor system where there is no measurable difference in relative speed between the cage drum and the belt" (Appx01975 at 68:7-17), that a POSITA uses the terms 'slip' and

'overdrive' interchangeably (Appx01957 at 50:4-12), and that as admitted by both the '388 and '645 Patents and Mr. Straight "if you're using positive engagement, you're not going to have any slip." Appx01974 at 67:17-20; See also Appx02416-02417, Appx01627 at ¶ 11, and Appx00975 at ¶ 11.

Laitram admits that Roinestad2 discloses a positive drive conveyor system. Appellant's Br. 13. However, Laitram now further argues that Roinestad2's positive drive conveyor is not without slip, as Roinestad2 discloses that occasional slippage of engagement with one of the channel legs due to miniscule variances in speed may be tolerated because:

> [s]aid occasional slippage does not interfere with the positive character of the drive. When slippage at one of the driving bars occurs, the positive driving engagement of all or most of the remaining driving bars is maintained.

Appx00798 at 8:46-50. In short, the drive and belt as a whole does not slip, because of the positive engagement that is always maintained between multiple portions of the drive and the belt. Laitram's limited description of Roinestad2 likewise omits important features Roinestad2 discloses to a POSITA. Roinestad2 teaches synchronization of identical drive speeds of the belt and the drive tower to fix the length of belt between the inlet and outlet ends of the helical portion of the belt's travel (the opposite of overdrive) thus avoiding any slip at all. Appx00797 at 6:14-20. ("It is important that the supplemental drives 25 and 26 drive the belt at the same

speed at each of their locations and that these locations be sufficiently near the inlet and outlet ends of the helical portion of the belt's path to maintain substantially fixed the length of belt extending between the inlet end and the outlet end of the helical portion.") Appx00797 at 6:34-36. ("Accordingly, the belt 11 should be maintained at a fixed length from one end to the other of its helical portion.") Appx00798 at 8:28-36. ("Accordingly, the supplemental drives 25 and 26 drive the belt 11 at identical speeds at their respective locations to fix the length of belt between the two drives. Thus the supplemental drives 25 and 26 have their speeds synchronized precisely. The primary drive provided by the rotatable cage 21 is also synchronized with the supplemental drives 25 and 26.")

### B. The Prior Art Describes a Ridge Tapered Along a Portion of Its Length

The description of Roinestad in Laitram's brief omits important features that Roinestad discloses. For instance, Roinestad teaches (see Appx00566 at 1:49-56) that "[a] major problem in conveyor systems of the character described has involved the tension in the belts… not only high belt tension but in non-uniform belt tension… increased belt wear, excessive power requirements and a tendency for the articles being conveyed to be shifted about." See also Appx00566 at 1:63-65 ("[a] further object of the invention is to provide such a system in which the belt may be smoothly and economically driven under low tension."). Laitram's brief also omits that

Roinestad discloses that a tapered surface provides a more rapid lowering of belt tension. Appx00571 at 12:42-45 ("This taper is formed by mounting between the upper ends of the driving rods 303, a plurality of tapered driving rods 304 which are connected to the drum."); Appx00571 at 12:53-66 ("The tapered entrance end of the drum has several advantages… [t]hus, there is a more rapid lowering of the belt tension."); Appx00571-00572 at 12:75-13:3 ("[s]ince the tapered entrance end of the drum very rapidly removes the tension from the belt."); and Appx00572 at 13:61-63 ("the diminishing diameter of the drum tends to remove tension as the belt progresses through the successive loops.").

## III. THE BOARD'S FINAL WRITTEN DECISIONS

The Board's final written decisions found that claims 1-4 of the '645 Patent and claims 9, 11-13 of the '388 Patent were unpatentable but claim 10 of the '388 Patent was not demonstrated to be unpatentable.

### A. Pupp and Roinestad2 Describe Positively Driven Without Slip

The Board correctly construed positive drive "without slip" and correctly found that both Pupp and Roinestad2 spiral conveyor systems utilize such a drive system. Appx00015, Appx00041-00051, Appx00081-00082, Appx00109-00110, Appx00143, Appx00155-00165, Appx00201-00202, Appx00217-00219, and Appx00238.

Contrary to Laitram's argument, Pupp is not silent on whether its conveyor belt moves via positive or friction drive. As the Board correctly found, Pupp's preferred embodiment eliminates friction in the circumferential direction around the drum by driving engagement, referring to the usual "prior art solutions" of "positive engagement between the drum and the inside of the conveyor belt" to cope with circumferential friction. Appx00042-00044, Appx00157-00159.

The Board specifically rejected Laitram's expert testimony that Pupp did not disclose positive drive but instead allegedly disclosed "a friction drive system that has no friction and thus does not drive the tower at all" as not supported by the record. Appx00045-00051, Appx00159-00165. The Board instead accepted Ashworth's expert Mr. O'Keefe's testimony and correctly found that Pupp disclosed to a POSITA a spiral conveyor with positive drive by positive engagement between the drum and the inside of the conveyor belt. Appx00051, Appx00165. The Board's finding is also supported by the factual declaration of Ingmar Pupp (Appx02454-02466), attesting that his conveyor employed positive drive as well as the evidence of the level of ordinary skill in the art exemplified by four prior art patents (Appx02332-02362, Appx02363-02376, Appx02377-02386, and Appx02387-2407; see also Appx02426-02427) with earlier dates than Pupp, each of which discloses a spiral conveyor with positive drive without slip by using structure on the drive tower engaging the inside edge of the conveyor belt.

Laitram argues without any support that the Board improperly relied upon the doctrine of inherency to find that Pupp disclosed positive drive to a POSITA. Appellant's Br. 36-45. Neither the Board nor Ashworth even mentioned the word inherent let alone asserted the doctrine of inherency to render the claims of the '388 and '645 patents invalid for obviousness. Rather, the Board correctly determined that a POSITA would have understood from the various teachings of Pupp that the embodiment of Figure 8 includes positive drive to provide the positive engagement between the drum and the inside of the conveyor belt to cope with friction in the circumferential direction as described at columns 1, 3 and 4 and as testified by Ashworth's expert Mr. O'Keefe. See Appx00047, Appx00161-00162, quoting Appx00630-00631, ⁋ 83, Appx01337-01338, ⁋ 83 ("The belt 2 is driven by ridges on the drive members 10" wherein the ridges engage the inside edge of the belt 2. (citing Ex. 1003, 1:30-33, 3:3-8, 4:14-36, Figs 5, 8")).

Laitram complains that Pupp does not disclose all of the details of the construction of the inner edge of the belt or exactly how the ridge of Fig. 8 engages the inner edge of the belt. (Appellant's Br. 40) However, the Board correctly recognized that it is not necessary for a patent specification to provide all details that are well within the ordinary level of skill in the art. This Court in *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330 (Fed. Cir. 2020), rejected the idea that every claim element must be expressly stated by patents or printed publications, explaining

it is improper to "ignore the skilled artisan's knowledge when determining whether it would have been obvious to modify the prior art." *Id*. at 1337-38. Expert testimony that a claim feature would have been obvious can be enough when it was known in the art and within the general knowledge of a skilled artisan. *Id*. at 1338. Similarly, in *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355 (Fed. Cir. 2016), this Court determined that common knowledge can supply a claim limitation not disclosed in a reference to show obviousness when "the limitation in question [is] unusually simple and the technology particularly straightforward." *Id*. at 1361-62.

The Board also appreciated that Pupp expressly discloses that the prior art solutions for coping with friction in the circumferential direction was "usually by a positive engagement between the drum and the inside of the conveyor belt along the helical path." Appx00042-00043 and Appx00157-00158, both citing in part Appx00547 at 1:30-33. The details for how to implement positive engagement between the drum and the inside edge of the conveyor belt were well within the level of ordinary skill. Appx02332-02362, Appx02363-02376, Appx02377-02386 and Appx02387-02407; see also Appx02426-02427. As such, the Board did not rely upon inherency as Laitram argues. Rather, the Board determined that Pupp actually disclosed positive drive to a POSITA based on the substantial evidence in the record discussed above, and found that Laitram's expert Mr. Straight's testimony on this issue (that Pupp discloses "a friction drive system that has no friction and thus does

not drive the tower at all") was without support in the record (Appx00045-00046, Appx00159-0160). The Board correctly determined that the record more strongly supported the conclusions that that Pupp discloses positive drive without slip to a POSITA. Appx00042-00044, Appx00051, Appx00157-00159, Appx00165.

Contrary to Laitram's argument, the Board also did not sua sponte make any substantive change in its construction of the claim term "without slip." Below, side by side is the Board's construction in the Institution Decision next to the Board's construction in the Final Written Decision.

| **Board Institution Decisions** (Appx00827, [Appx01481]) | **Board's Final Determination** (Appx00015, [Appx00143]) |
|---|---|
| At this stage of the proceeding, we understand "without slip" in element 9F [1E] as describing a system in which there is no slip between the conveyor belt and the drive tower. This understanding is supported by the plain language of element 9F [1E], considered in its entirety, in light of the portion of the Background identified by Petitioner. See Ex. 1001, 1:41-45 [Ex. 1009, 1:55-59] ("Because there is positive engagement between regularly spaced drive structure on the cage and regularly spaced edge structure on the inside edge of the belt, *there is no slip* as in overdrive systems." (emphasis added)), quoted at Pet. 25, 26 [26, 28]. This understanding is further supported by the examiner's Notice of Allowability (see Ex. 1002, at 158 (stating: "The prior art does not teach or | For these reasons, based on the complete record, we construe "without slip" in element 9F [1E] as describing a system in which there is essentially no slip between the conveyor belt and the drive tower. This construction is supported by the plain language of element 9F [1E], considered in its entirety, in light of the portion of the Background section of the Specification identified by Petitioner. *See* Ex. 1001, 1:41–45 [Ex. 1009, 1:55-59] ("Because there is positive engagement between regularly spaced drive structure on the cage and regularly spaced edge structure on the inside edge of the belt, *there is no slip* as in overdrive systems." (emphasis added)), *quoted at* Pet. 25, 26 [26, 28]. This construction is further supported |

| | |
|---|---|
| disclose a *non-slip* spiral conveyor ...." (emphasis added))), and generally aligns with Petitioner's first alternative construction (see Pet. 25 [26]). | by the examiner's Notice of Allowability [in the '388 patent] (see Ex. 1002 at 158 (stating: "The prior art does not teach or disclose a *non-slip* spiral conveyor . . . ." (emphasis added))), and generally aligns with Petitioner's first alternative construction (*see* Pet. 25 [26]). Patent Owner agrees with this understanding of "without slip" (PO Resp. 10–11 [9-10]), and Petitioner did not address the issue in the Reply. |

Laitram tries to make much of the word "essentially," however, that does not detract from the substance of what the Board determined which is consistent with the intrinsic evidence. The intrinsic evidence clearly supports, as the Board stated in both its Institution Decision and in its Final Written Decision that without slip means "there is no slip as in overdrive systems." Appx00827, Appx01481, Appx00015, Appx00143, Appx00262 at 1:41-45, Appx00263 at 4:11-15, Appx00265 at 7:3-7 ("without overdrive"), Appx00277 at 1:55-58, Appx00278 at 4:28-33, and Appx00280 at 7:21-25.

### B. Ridge Tapered along a Portion of its Length

Contrary to Laitram's description of the '388 patent, the specification does not define the term "tapered region" as the ridge having a changing height in a lower segment of each drive member and the Board did not ignore other claim language when it construed "ridge tapered along a portion of its length." Instead, the Board examined all of the intrinsic evidence, the patent specification, the prosecution

history and the cited prior art and construed this term to be consistent with all of the intrinsic evidence (Appx00033-00041).

Laitram attempts to save the validity of its claims by arguing that the term tapered is limited to how that term is applied to the embodiment of FIGS 2A and 2B. However, the Board was correct when it refused to narrowly construe the term to apply to only the embodiment of FIGs 2A and 2B as Laitram now argues. Appx00028-00041. The same term is also applied to FIGS 4A and 4B and to FIGs 17 and 18 where the term "tapered" is used to denote the distance of the outer surface of the ridge from the axis of rotation of the tower, rather than a change in height of the ridge as in FIGS 2A and 2B. Appx00035-00038. The Board's construction that the term tapered encompasses either a change in height of the ridge or a change in the distance of the outer surface of the ridge from the axis of rotation is fully consistent with usage of the term tapered in the intrinsic evidence and therefore is correct. Appx00033-00041.

Additionally, Laitram's argument that tapered is limited to a change in height of the ridge directly contradicts the assertion by Laitram's counsel at the Oral Hearing that claim 9, which has the language "ridge tapered along a portion of its length," covers the FIG 17 embodiment. Appx01865 ("claim nine is more like Figure 17"). The specification states that "FIG. 17 has a cylindrical upper portion

182 and a skirt portion 184 th[at] tapers outwardly away from the tower's vertical axis 186 toward the bottom 188 of the tower." Appx00264 at 6:54-57. The specification also makes it clear that the FIG.17 embodiment has "drive members that engage the inside edge of the belt with a ridge." Appx00265 at 7:3-7. As such, Laitram's construction of "tapered" is far too narrow and restrictive, and is contradicted by both the intrinsic evidence and by Laitram's counsel's own assertions at the oral hearing. The Board's construction should therefore be affirmed.

### C. Motivation to Combine

#### 1. Pupp and Roinestad

The Board correctly found that rational underpinnings support the conclusion that a POSITA would have been motivated to make a spiral conveyor system having a positive drive without slip and tapered surface so that the belts may be smoothly and economically driven under low tension. Appx00051-00063, Appx00165-00177. In Pupp-Roinestad, Pupp's positive drive without slip provides the benefit of reduced "circumferential friction" as compared to friction (overdrive) drives such as Roinestad. Appx00547 at 1:24-40, Appx00548 at 3:3-8. In view of this, the Board found that a POSITA would have been motivated to combine Pupp's positive drive with Roinestad's tapered surface to reduce belt tension. Appx00057-00058, Appx00063, Appx00172-00173, and Appx00177. In arriving at this finding the

Board also accepted the testimony of Ashworth's expert over the testimony of Laitram's expert, which the Board found should be given little weight. Appx00059, Appx00173. Given that Roinestad discloses dividing the height of the drive tower into tapered and non-tapered sections, a POSITA would reasonably expect that Pupp's and Roinestad's teaching could be combined as a simple matter of routine design choice using standard tools (e.g., computerized computational systems) to evaluate and optimize the system's design. Appx00062-00063, Appx00176-00177, citing Appx00618-00619, ¶ 67, Appx01326, ¶ 68, and Appx01335-01337, ¶¶ 81-82. In light of the complete record, there is substantial evidence to find motivation to combine Pupp and Roinestad. Appx00051-00063, Appx00165-00177.

**2. Roinestad 2 and Roinestad**

The Board correctly found that the motivation to combine Roinestad2 and Roinestad is supported by rational underpinnings in that Roinestad2's positive drive would provide lower belt tension and reduce the amount of stress on the belt. Appx00110-00117, Appx00220-00227. Roinestad2 expressly indicates that its positive drive, which would be included in the proposed combination, provides a benefit of reduced belt tension as compared to frictional drive systems such as in Roinestad. Appx00795 at 1:17-38, 1:67-68, Appx00797 at 6:40-45, Appx00110-00117, Appx00220-00227. The Board also correctly found that Roinestad2 did not

criticize, discredit or otherwise discourage drive towers in shapes other than cylinders. Appx00112-00113, Appx00222-00223.

Both Roinestad (Appx00571-00572 at 12:53-66, 12:75-13:3, and 13:62-64) and Heber (Appx00553 at 1:63-65) teach that it was a well-known concept that a tapered surface reduces belt tension. Laitram's expert Mr. Straight admitted that these references taught a POSITA that a tapered surface will reduce tensions in the belt and would be a benefit to one operating a positive-drive spiral conveyor. Appx02433; Appx02137-02138 at 230:23-231:10. A POSITA would have been motivated to combine Roinestad2 and Roinestad to provide lower tension and reduce the amount of stress on the belt. Appx00619-00623, Appx00711-00712, ¶ 168, Appx00714-00715, ¶ 172, Appx00717-00718, ¶ 175; Appx01389-01393, Appx01396-01400, ¶¶ 141, 145, 149, 151-152, and 154. As such, there is substantial evidence of record to support the Board's finding of motivation to combine Roinestad2 and Roinestad. Appx00110-00117, Appx00220-00227.

### D. Claims 9 and 10 of the '388 Patent

The Board correctly found that independent claim 9 of the '388 patent would have been obvious to a POSITA over the combination of Pupp and Roinestad. Appx00020-00078 ("the evidence presented by Petitioner strongly indicates that claim 9 would have been obvious over the combination of Pupp and Roinestad."). However, the Board also found that the Petitioner failed to demonstrate by a

preponderance of the evidence that claim 10, which depends from claim 9, would have been obvious based on the combination of Pupp and Roinestad. Appx00078-00081.

The Board determined that Ashworth applied a combination of Pupp-Roinestad to render claim 9 obvious that included a drive tower generally configured like the conical drum 12 in FIG. 1 of Roinestad. Appx00026-00027, Appx00080. Dependent claim 10, however, adds the language "distance of the ridge from the vertical axis in the lower segment is constant below the portion that is tapered," and thus does not claim a purely conical tower. The tower shape of claim 10 is plainly disclosed by Roinestad in the left side FIG. 11 and FIG. 12, which show a mixed conical/cylindrical shape and, was relied upon to show the claimed shape. Appx00080. Although recognizing that Roinestad's FIG 11 and FIG. 12 embodiment disclosed a drive tower having a mixed conical/cylindrical shape, the Board decided this figure could not be reconciled with the Board's finding that claim 9 was obvious over the combination of Roinestad's FIG. 1 conical drive tower embodiment in combination with Pupp's positive drive. Appx00080. Thus, for claim 10, the Board considered only what FIG. 1 of Roinestad would teach a POSITA, rather than considering the teachings of the Roinestad reference as a whole, including the pertinent teaching of the mixed conical/cylindrical drive tower of FIG. 11 (left side) and FIG. 12.

Similarly, with respect to the ‘388 Patent claims 9 and 10, the Board found that the petitioner had not demonstrated that the combination of Roinestad2 and Roinestad rendered either claim obvious. Appx00102-00103. The Board’s reasoning was much the same as with the respect to the Board’s finding that claim 10 was not obvious over Pupp and Roinestad. Appx00102-00103. As it did with Pupp-Roinestad, the Board applied only the teachings of Roinestad’s FIG. 1 conical shaped drum embodiment, rather than the teachings of Roinestad as a whole, which includes the embodiment of FIG. 11 (left side). It is this FIG. 11 and FIG. 12 embodiment that clearly taught a mixed cylindrical/conical shaped drum with the constant cylindrical section below the conical tapered section of the drum, as recited in claim 10. Because of this limited application of what Roinestad expressly taught to a POSITA, the Board erred in finding that claim 9 had not been demonstrated to be obvious over the combination of Roinestad2 and Roinestad. For the same reason, the Board erred in finding that claim 10 had not been shown to be obvious over the combination of Roinestad2 and Roinestad. A prior art reference should be considered for all that it teaches to a POSITA, not merely a single embodiment. See *In re Heck*, 699 F.2d 1331, 1333 (Fed. Cir. 1983) (prior art references “are part of the literature of the art, relevant for all they contain.”); *In re Applied Materials, Inc.*, 692 F.3d 1289, 1298-99 (Fed. Cir. 2012). (“A reference must be considered for

everything that it teaches, not simply the described invention or a preferred embodiment.”)

Had the Board considered and applied the teachings of Roinestad as whole, including the teachings of the FIG. 11 and FIG. 12 embodiment having a constant cylindrical section below a conical tapered section, instead of limiting the application of Roinestad’s disclosure to only the FIG. 1 conical drum embodiment, the Board would have correctly found claims 9 and 10 obvious over Roinestad2 and Roinestad. This is particularly true given that the Board expressly found this to be “relatively straightforward technology at issue here” with respect to guidance on what parts to pick and why to form the prior art combination. Appx00058, Appx00173.

## SUMMARY OF ARGUMENT

### Laitram’s Appeal

The Court should affirm the Board’s ruling that claims 9 and 11-13 of the ‘388 Patent and claims 1-4 of the ‘645 Patent are unpatentable. Notably:

- The Board correctly construed “without slip” in accordance with the intrinsic evidence of the patents at issue, which stresses “there is no slip as in overdrive systems,” to mean “a system in which there is essentially no slip between the conveyor and the drive tower,” and substantial

evidence supports the Board's finding that multiple prior art references disclosed positive drive without slip as claimed.

- Substantial evidence supports the Board's proper finding that Pupp expressly disclosed positive drive without slip to a person of ordinary skill in the art and the Board properly rejected Laitram's expert, Mr. Straight's unsupported testimony that Pupp instead disclosed an inoperable friction drive system that has no friction.

- Laitram forfeited its present challenge to the Board's findings with respect to Roinestad2 by failing to even raise in its Patent Owner's Responses that combinations utilizing Roinestad2 did not meet the claim elements because they allegedly taught positive drive with slip.

- Obviousness of claims 9, 11-13 of the '388 Patent and claims 1-4 of the '645 Patent should be affirmed because substantial evidence supports the Board's finding that a skilled artisan would have been motivated to combine the teachings of prior art in the same field of endeavor as the patents at issue, i.e., combining the drive tower's tapered surface which reduced friction and belt tension (as taught in Roinestad) with positive drive without slip systems (as taught in Pupp and Roinestad2) that also expressly recognized that the reduction in belt tension was beneficial.

As there are a limited number of design options for the drive tower surface (i.e., straight, tapered, or both), combining these design options to obtain the recognized benefit of reduced belt tension is a mere matter of design choice optimization providing predictable results. Even Laitram's expert, Mr. Straight, admitted that it was known in the prior art to use a tapered surface to achieve the benefit of reducing belt tension and that a POSITA would want that known benefit of reduced belt tension provided by a tapered drive tower surface in a positive drive spiral conveyor.

- The Board correctly construed the '388 patent claim 9 term "tapered along a portion of its length" in view of all of the intrinsic evidence rather than unduly limit its construction to the single embodiment of FIGs 2A and 2B contrary to Laitram's counsel's prior admission before the Board.

**<u>Ashworth's Cross-Appeal</u>**

The Court should reverse the Board's finding that claims 9 and 10 of the '388 patent were not demonstrated to be obvious over Roinestad2 and Roinestad and that claim 10 was not demonstrated to be obvious over Pupp and Roinestad. Notably:

- The Board erred as a matter of law in limiting what was understood by a POSITA from the teaching of Roinestad, to only one embodiment, (FIG. 1), rather than what was understood by a POSITA from the teaching of Roinestad as a whole e.g., FIG. 11 and FIG. 12 embodiment as well as the FIG. 1 embodiment.

## ARGUMENT

## IV. STANDARD OF REVIEW

This Court reviews the Board's decisions "to ensure that they are not 'arbitrary, capricious, an abuse of discretion, . . . otherwise not in accordance with law . . . [or] unsupported by substantial evidence.'" *Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 992 (Fed. Cir. 2017) (quoting 5 U.S.C. § 706(2)(A), (E)). This Court reviews the Board's legal conclusions de novo and factual findings for substantial evidence. *Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382 (Fed. Cir. 2017) (citation omitted). "A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate support for the finding." *Id*. (citation omitted). "This court does not reweigh evidence on appeal, but rather determines whether substantial evidence supports the Board's fact findings." *In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Applied Materials*, 692 F.3d at 1294. "The possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id*.

"Whether a claimed invention is unpatentable as obvious under § 103 is a question of law based on underlying findings of fact." *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). A claim is unpatentable under 35 U.S.C. § 103(a) if the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. *KSR*, 550 U.S. at 406. The Board's ultimate obviousness determination is reviewed *de novo* and underlying factual findings for substantial evidence. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1373 (Fed. Cir. 2016). What a prior-art reference teaches, the differences between the prior art and the claimed invention, and the existence of a motivation to combine are fact issues, reviewed for substantial evidence. *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015); *Outdry Tech. Corp. v. Geox S.p.A.*, 859 F.3d 1364, 1368 (Fed. Cir. 2017); *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1238 (Fed. Cir. 2010).

## V. THE BOARD DID NOT ERR IN CONSTRUING "WITHOUT SLIP"

The Board neither erred in its construction of "without slip" nor made a substantive change in this construction between its initial determination and final written decision.

### A. The Board Correctly Construed "Without Slip"

Laitram accuses the Board of: (1) improperly effecting a material change to its preliminary claim construction of "without slip" by including the word "essentially" in its Final Written Decision; and (2) applying the term to the art in a manner that allegedly reads it out of the claims entirely. Appellant's Br. 25. Both of these propositions are wrong.

First, the Board's Final Written Decisions explicitly repeated the claim construction analysis from the Decisions Granting Institution. Appx00015, Appx00827, Appx00143, and Appx01481. In each instance, the Board highlighted the intrinsic evidence explaining that the system of the patent is "non-slip" and that "there is no slip as in overdrive systems." Moreover, in the Final Written Decisions, the Board noted that Laitram did not disagree with its prior analysis from the Decisions Granting Institution, further demonstrating that the Board did not materially alter its construction of "without slip" in its Final Written Decisions. Indeed, while Laitram complains that the Board included the word "essentially" no slip in the Final Written Decisions, and wrote "no slip" in the Decision Granting

Institutions, Laitram fails to identify any analysis of the Board that hinged on the inclusion of the word "essentially." Further, as explained below, the Patent Owner Responses contained no arguments about Pupp and Roinestad2 that would give relevance to the issue of whether the claim construction required no slip or "essentially" no slip. In any event, the prior art teaches positive drive systems with no slip and essentially no slip (even assuming there were some difference between those) for the same reasons, rendering Laitram's claims of a "change" in claim construction immaterial.

Second, in applying its construction, the Board did not improperly read the term "without slip" out of the claims; it simply responded to the arguments Laitram actually raised in the Patent Owner Responses. To be clear, Laitram never argued to the Board that Pupp failed to meet the claims because it disclosed a positive drive with slip. Appx00842, Appx00863-00874, Appx01496, and Appx01518-01530. Rather, Laitram only argued that Pupp failed to teach any sort of positive drive, because it allegedly used a friction (overdrive) system. *Id*. In explaining why Laitram's argument was not supported by the evidence, it was perfectly appropriate, and certainly not a claim construction error, for the Board to focus on Pupp's teaching of a positive drive. *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) ("we need only construe terms 'that are in controversy, and only to the extent necessary to resolve the controversy'").

Similarly, Patent Owner's Responses never argued that Roinestad2 lacked a positive drive without slip. Appx00906-00910, Appx01560-01564 (arguing only a lack of motivation to combine Roinestad2 and Roinestad, not that Roinestad2 disclosed positive drive with slip, rather than without slip). Accordingly, it also was not a claim construction error for the Board to rule that Laitram had forfeited any argument Roinestad2 did not meet the claim because it allegedly taught a positive drive with slip. Appx00109-00110, Appx00218-00219. In any event, the Board's analysis of Pupp and Roinestad2 indicates that its decision was not based on the use of the term "essentially" in the Final Written Decisions. Rather, the Board simply found that the prior art taught non-slip drives, just like the patents-in-suit do. Appx00051, Appx00110, Appx00157, and Appx00219.

### B. Skilled Artisans Understood that a Positive Drive "Without Slip" Did Not Use Overdrive to Drive the Belt

As was well known in the art of spiral conveyors, the conveyor belt may be driven by a positive engagement system or a friction (overdrive) system. Appx00262 at 1:22-26 and 1:38-45, Appx00277 at 1:36-40 and 1:52-59, Appx00600-00602, Appx01307-01309, Appx01056-01058, ¶¶ 41, 42. In a friction system, the belt is frictionally driven by a rotating drum, and the drum rotates faster than the belt travels, which is called "overdrive." *Id.* Overdrive is simply slippage that occurs between the belt and the drum that is driving the belt. *Id.*

In a positive engagement system, however, there are ridges or other structures that engage the conveyor belt much like teeth of a sprocket engage a bicycle chain to move it. Appx00601, Appx01057-01058, Appx01308. Since the belt is being pulled forward via this positive engagement, there is not overdrive; the ridges are moving at the same speed as the belt. Appx01974 at 67:17-20 ("Q. But if you're using positive engagement, you're not going to have any slip, are you? A. Correct."); Appx01975-01976 at 68:7-17, Appx01957 at 50:4-12, Appx00262 at 1:38-45, Appx00277 at 1:55-59, Appx01627, ¶ 11, and Appx00975, ¶ 11.

The background section of the patents-in-suit admits that both friction drive and positive engagement drive systems were known in the prior art. As to prior art friction drive systems, the patents describe them as follows:

> To reduce the maximum belt tension, overdrive spiral conveyor systems are used. In these overdrive systems, the conveyor belt is driven by frictional contact between the inside edge of the belt and the faster-rotating outer surface of the rotating drum about which the belt is helically wrapped.

Appx00262 at 1:21-26, Appx00263 at 4:11-5, Appx00265 at 7:3-7, Appx00277 at 1:35-40, Appx00278 at 4:28-32, and Appx00280 at 7:21-25. The patents then explain that the overdrive (slip) that occurs in friction drive systems is absent in prior art positive engagement systems:

> Positively driven spiral systems, in which drive structure on the outside of a rotating cage engages structure on the inside of a conveyor belt, have been used to overcome some of the shortcomings of overdrive systems. Because there is positive engagement between regularly spaced drive structure on the cage and regularly spaced edge structure on the inside edge of the belt, there is no slip as in overdrive systems.

Appx00262 at 1:38-45, Appx00277 at 1:52-59. Thus, the patent explains as background that, because of the interaction between the drive and the belt in positive engagement systems, "there is no slip as in overdrive systems." *Id*. This is fully consistent with the understanding of skilled artisans. Appx00600-00601, Appx01307-01309 (explaining that to a skilled artisan, positively driven without slip refers to eliminating overdrive), Appx01974-01976 (Laitram's expert explaining that in positive drive systems there is no slip), Appx00824-00828, Appx01478-01482. Indeed, Laitram's expert provided the following testimony, which is fully consistent with the patents-in-suit:

> Q. But if you're using positive engagement, you're not going to have any slip, are you?
> A. Correct.

Appx01974. Thus, both experts agreed that positive engagement systems avoid overdrive, i.e., are without slip.

### C. The Board Correctly Understood the Meaning of "Without Slip" with Regard to Positive Drive Systems

Understanding the background knowledge of skilled artisans, as set forth above, the Board, in its Decisions Granting Institution, discussed what it meant for a helical conveyor to be positively driven without slip. Appx00824, Appx00827, Appx00861, Appx01478-01481. The Board first acknowledged Petitioner's expert testimony that this term had a known meaning in the art relating to eliminating overdrive. Appx00824-00825, Appx01478. The Board then reviewed the patent itself and its file history, and noted that "without slip" meant non-slip. Appx00827-00828, Appx01480-01481. The Board then concluded by stating that "without slip" referred to a system in which there is no slip between the conveyor belt and the drive tower, which it believed "generally aligned" with the discussion of Petitioner's expert related to eliminating overdrive. Appx00827, Appx01481.

Laitram did not dispute the Board's analysis of the meaning of "without slip." Appx00012, Appx00143, Appx00861, and Appx01515-01516. In the Final Written Decision, the Board correctly stated:

> Patent Owner agrees with the construction of "without slip" preliminarily applied in the Decision on Institution. … Although the parties do not actively dispute the construction of "without slip," for completeness, we now repeat much of the prior analysis on this issue.

Appx00012, Appx00140. This, in and of itself, shows that the Board was substantively using the same construction it had previously used, with which Laitram had agreed. The Board then repeated the analysis from its Decisions Granting Institution, which discussed how without slip meant non-slip, and was described in the patents at issue as "there is no slip as in overdrive systems." Appx00012-00015, Appx00140-00143. The Board then indicated that the term "without slip" referred to a system "in which there is essentially no slip between the conveyor belt and the drive tower," and reiterated that Laitram agreed with the Board's analysis. Appx00015, Appx00143. Here, again, the Board was indicating that it was not substantively changing its construction of "without slip" from its Decision on Institution. In short, the Board believed that the terms having "essentially no slip" and "no slip" were not substantively different. This is borne out by the remainder of the Board's analysis, which does not reference the phrase "essentially no slip" again. Thus, the Board applied a meaning of "without slip" with which both parties agreed.

### D. The Board Did Not Read "Without Slip" Out of the Claims

Laitram also accuses the Board of effectively reading the claim limitation "without slip" out of the claims entirely. Appellant's Br. 25. However, Laitram does not clearly link this argument to the purported substantive change in the Board's construction, i.e., the addition of the word "essentially." Rather, Laitram

appears to be arguing that the Board, in applying its claim construction (regardless of whether it included the word "essentially"), gave no meaning to the term "without slip" by automatically assuming that every positive drive operates without slip. Appellant's Br. 24-36.

As an initial matter, it is factually true that positive drives operate without slip. The patent says so expressly (Appx00262 at 1:38-45, Appx00277 at 1:52-58) and both experts agreed. Appx00601, Appx00606-00607, Appx00975, Appx01308, Appx01313-01314, Appx01515-01516, and Appx01974 (Laitram's expert testifying: "Q. But if you're using positive engagement, you're not going to have any slip, are you? A. Correct."). This is because, as explained above, the "slip" recited as lacking in the claim is the overdrive found in friction systems. See, e.g., Appx00262 at 1:41-45, Appx00263 at 4:11-15, Appx00265 at 7:3-7, Appx00277 at 1:52-55, Appx00278 at 4:28-32, and Appx00280 at 7:21-25 (Describing how the patent's spiral conveyors "positively drive the conveyor belt without overdrive.").[2] In any event, in applying its claim construction, the Board did not read the term "without slip" out of the claims, it simply responded appropriately to the limited arguments Laitram set forth in the Patent Owner's Responses.

---

[2] During prosecution, the applicant also distinguished art (Heber and Irwin) as being friction drives with overdrive (the drum rotated one to five percent faster than the belt), and thus having slip. Appx00516.

With respect to the Pupp reference, as discussed in greater detail below, the Board addressed at length how Pupp taught to a skilled artisan a positive drive without slip. Appx00041-00051, Appx00155-00165. For instance, the Board credited Petitioner's expert's description of how ridges on the drive members 10 of Pupp drive the belt. Appx00047, Appx00161. The Board further explained that only those strips 10" passing though "a small angular area 14" will be disengaging / engaging at any particular time in Pupp is consistent with a positive drive without slip because the belt is still being positively driven by many other ridges all around the drum. Appx00048-00050, Appx00162-00164. In short, the Board explained at length, citing to Pupp and the experts' supporting evidence, why Pupp taught a positive drive without slip. Appx00041-00051, Appx00155-00165.

In its analysis, the Board focused on Pupp's teaching of a positive drive because Laitram argued that Pupp entirely lacked a positive drive. Appx00868-00874, Appx01523-01529. Laitram never made (and thus forfeited) any argument that Pupp taught a positive drive, but one with unacceptable amounts of slip. Appx00862-00874, Appx01516-01529. Consequently, it cannot be a claim construction error for the Board to have focused on the issue Laitram actually raised: whether Pupp even disclosed a positive drive. There is no indication whatsoever that the Board believed Pupp taught a positive drive with slip, yet still met the claims. Rather, it found, correctly, that Pupp taught a positive drive without slip, just like

the patents-in-suit do, and resolved the only argument that Laitram made about this claim element, *i.e.*, that Pupp only disclosed a friction drive.

Similarly, Laitram never argued in its Patent Owner's Responses that the combination of Roinestad and Roinestad 2 failed to teach a positive drive without slip. Appx00906-00910, Appx01560-01564. However, in considering whether this element was met, the Board (in addition to correctly holding that Laitram forfeited this argument) explained why Roinestad2 had a positive drive that operated without slip. Appx00109-00110, fn. 26; Appx00217-00219, Appx00238. Here, too, the Board never gave any indication that prior art systems with slip would meet the claim limitation "without slip." In short, the Court did not erase "without slip" from the claims.

Laitram wrongly argues that this case must be reversed as it is no different than *Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1263-64 (Fed. Cir. 2021). However, this case is not like *Qualcomm.* In *Qualcomm*, unlike the instant case, the Board actually made substantial changes to its claim construction. As discussed above, that did not occur here.

## VI. MULTIPLE PRIOR ART REFERENCES TEACH POSITIVE DRIVE "WITHOUT SLIP"

### A. Roinestad2 Teaches Positive Drive Without Slip

Laitram argues on appeal that Roinestad2 does not disclose positive drive without slip. The only basis for this argument is that Roinestad2 discloses that occasional slippage of engagement with one of the channel legs due to minuscule variances in speed may be tolerated. However, Roinestad2 makes clear that

> [s]aid occasional slippage does not interfere with the positive character of the drive. When slippage at one of the driving bars occurs, the positive driving engagement of all or most of the remaining driving bars is maintained.

Appx00798 at 8:46-50. Laitram fails to acknowledge that Roinestad2 further teaches a POSITA how to avoid any slippage at all. Specifically, Roinestad2 teaches to synchronize the drive speeds of the drive cage and the conveyor belt to identical speeds to fix the length of belt between the inlet and outlet ends of the helical portion of the belt's travel, and as such expressly discloses how to avoid any slip at all with Roinestad2's positive drive. Appx00797 at 6:14-20, 6:34-36, Appx00798 at 8:28-36 ("Accordingly, the supplemental drives 25 and 26 drive the belt 11 at identical speeds at their respective locations to fix the length of belt between the two drives. Thus the supplemental drives 25 and 26 have their speeds synchronized precisely. The primary drive provided by the rotatable cage 21 is also synchronized with the supplemental drives 25 and 26.") Both Laitram's expert Mr. Straight and Ashworth's expert Mr. O'Keefe testified, that "'without slip' is, therefore, a reference to a spiral conveyor system where there is no measurable difference in relative speed

between the cage drum and the belt" and that "if you're using positive engagement, you're not going to have any slip." Appx01975 at 68:7-17, Appx01974 at 67:17-20, Appx01627, ⁋ 11, and Appx00975, ¶ 11. That is exactly what Roinestad2 discloses to a POSITA.

There is substantial evidence of record that Roinestad2 teaches that if you synchronize the speed of the drive and the speed of the belt, you thereby keep the length of the belt at a fixed length from the inlet to the outlet of the helical path. Thus, there is no slip or overdrive. Laitram's expert Mr. Straight admitted that without slip means "there is no measurable difference in relative speed of the cage drum and belt" and that a POSITA "use the terms 'slip' and 'overdrive' interchangeably" and that "if you're using positive engagement, you're not going to have any slip" (Appx02416, Appx01957 at 50:4-12, Appx01974 at 67:17-20, and Appx01975 at 68:7-17). As noted above, Roinestad2 teaches having identical speeds for the drum and belt, teaches having no overdrive, and teaches positive engagement at all times, all of which indicate the presence of a positive drive without slip. Accordingly, the Court should affirm the Board's finding that Roinestad2 teaches positive drive without slip.

### B. Laitram Has Forfeited Any Arguments That Roinestad2 Lacks Positive Drive Without Slip

Laitram has forfeited any argument that Roinestad2 or the Roinestad-Roinestad2 combination lack a positive drive without slip by failing to raise it in the Patent Owner Responses.[3] Appx00109-00110, Appx00217-00219, and Appx00238. Having failed to properly raise the argument to the Board, it may not do so before this Court. "If a party fails to raise an argument before the trial court," the court "may deem that argument waived on appeal ...." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009); *Microsoft*, 878 F.3d at 1074–75 ("[T]he general rule is that any argument not raised before the Board is waived on appeal.").

Laitram now claims that it failed to raise this argument in the Patent Owner Responses because it was unaware of the Board's allegedly altered claim construction in the Final Written Decisions. Appellant's Br. at 30 ("But Laitram had no notice that the Board and Ashworth would contend that all positive-drive systems operate "without slip."). This is nonsensical as Laitram did not even present any arguments, and therefore did not dispute that Roinestad2 taught positive drive (element [11G]) and positive drive without slip (elements [9F], [1E] and [3E]) in its Patent Owner Responses. Appx00109-00110, Appx00217-00219, Appx00238,

---

[3] The Board expressly cautioned Laitram that arguments not raised in its Patent Owner Response "may be deemed waived." Appx00838, fn. 15; Appx01492, fn. 13.

Appx00906-00910, and Appx01560-01564. Although the Board did not substantively alter its claim construction in the Final Written Decisions, Laitram asserts that the Board *broadened* its claim construction so as to read "without slip" out of the claims. By definition, this means that, if Roinestad2 does not meet the claims under the allegedly broader construction of the Final Written Decisions, it also does not meet the claims under the allegedly narrower construction from the Decisions Granting Institution, with which Laitram agreed. Thus, there is no excuse for Laitram's failure to argue in the Patent Owner's Responses that Roinestad2 does not teach the positive drive or "positive drive without slip" claim elements.

Laitram has provided no argument or reason to excuse its forfeiture. Nor could it. The issues here are not pure questions of law that would result in a miscarriage of justice if not considered, resolution in Laitram's favor is not beyond any doubt, Laitram had the opportunity to raise its arguments before the Board, and the issues raised in its brief present no significant questions of general impact of great public concerns, and no interest of substantial justice is at stake. *See L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1531 (Fed. Cir. 1995). As a result, Laitram has forfeited its arguments.

Given that arguments must be raised in the Patent Owner Responses to be considered, the Board did not abuse its discretion in holding that Laitram did not

timely raise an argument that Roinestad2 failed to teach a positive drive without slip. *In re Nuvasive, Inc.*, 842 F.3d 1376, 1379-82 (Fed. Cir. 2016).

### C. Pupp Discloses Positive Drive Without Slip

The Board properly found, based on substantial evidence, that Pupp disclosed positive drive without slip. Laitram argues that Pupp's only disclosure of positive drive is limited to a single sentence discussing prior art.[4] Appellant's Br. 38. ("Pupp's discussion of positive drive is brief and contained to the discussion of the prior art… Based solely on this discussion of the prior art, the Board jumped to the conclusion that Pupp must have been using positive drive as well.") According to Laitram, the Board relied only on Pupp's Background of the Invention's discussion of positive drive in the prior art to solve circumferential friction as inherently disclosing that Pupp's system uses positive drive. In particular, Laitram falsely argues that "[o]ther than this single reference in the background to positive drive in the prior art, Pupp is silent on the type of drive used in its system." Appellants Br. 12.

Pupp discloses positive drive without slip to a POSITA, both in the "Background of the Invention" section of the specification and in the "Detailed Description of the Preferred Embodiment(s) of the Invention" section of the specification. See

[4] Even if this counterfactual statement were true, Laitram fails to explain why a single disclosure in a prior art reference cannot invalidate a patent claim. There is no requirement that a prior art reference contain multiple disclosures of claim elements to render a claim obvious.

Appx00547 at 1:21-34, Appx00548 at 3:3-8 and 4:14-36, Appx00544, FIG 5, and Appx00545, FIG 8. The above cited portions from Pupp's "Detailed Description of the Preferred Embodiment(s) of the Invention," e.g, "accompany without friction, the drum in the circumferential direction" and "driving engagement" are references to the Background section "prior art solutions have coped with the circumferential friction, usually by a positive engagement between the drum and the inside edge of the conveyor belt," i.e. positive drive with no slip as in overdrive systems. Appx00547 at 1:21-34, Appx00042-00046, Appx00156-00160.

As Laitram's expert Mr. Straight admitted at his deposition "if you're using positive engagement, you're not going to have any slip" (Appx01974 at 67:17-20) and the terms "slip" and "overdrive" are used interchangeably by a POSITA. Appx01957 at 50:4-12. Ashworth's expert Mr. O'Keefe agreed with this testimony. Appx00975, ⁋ 11, Appx01627, ¶ 11. The Board accepted Mr. O'Keefe's testimony of what a POSITA would have understood from the express disclosure of Pupp and specifically rejected Mr. Straight's opinion that Pupp does not disclose positive drive without slip but rather discloses "a friction drive system that has no friction and thus does not drive the tower at all" as without support in the record. Appx00045-00046, Appx00159-00160.

Although Pupp may not expressly use the specific words "without slip," the Board correctly found that substantial evidence of record supports the finding that a

POSITA would understand that the ridge in Pupp's annotated FIG 8 would engage the inside edge of the conveyor belt to eliminate friction in the circumferential direction using positive engagement as expressly disclosed in Pupp. Appx00047 quoting Appx00630-00631, ⁋ 83 ("The belt 2 is driven by ridges on the drive members 10" wherein the ridges engage the inside edge of the belt 2. (citing Ex. 1003, 1:30-33, 3:3-8, 4:14-36, Figs 5, 8") Appx00161-00162, quoting Appx01337-01338.

The Board also correctly found that the plain language of Pupp "disclosing that *only those* strips 10" passing through 'a small angular area 14' (Ex. 1003, 3:29-32 [Appx00548]) (shown in figure 5, reproduced below) will be disengaging/engaging at any particular time" fatally undermines Laitram's argument that Pupp does not disclose positive drive. Appx00049, Appx00163-00164. Based on substantial evidence of record, the Board determined that "Pupp describes a positive drive as required in element 9F [1E] because the Figure [5] and Pupp's accompanying text indicate that belt 14 is positively engaged and driven by many of the strips 10 shown." Appx00049-00050, [Appx00164].

Laitram argues that the ridge shown in Figure 8 of Pupp indicates that Pupp discloses a friction drive having insufficient friction to actually drive a belt, i.e., that Pupp is inoperable. However, as noted above, the Board was provided substantial evidence to reject this argument, and was under no obligation to credit the testimony of Laitram's expert over that of Ashworth. Appx02332-02407; Appx02426-02427

Appx00042-00051, Appx00155-00165, Appx00201-00202. "If the evidence in [the] record will support several reasonable but contradictory conclusions, we will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative." *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002); *In re NTP*, 654 F.3d at 1292 ("This court does not reweigh evidence on appeal, but rather determines whether substantial evidence supports the Board's fact findings."). Accordingly, the Court should affirm the Board's finding that Pupp teaches positive drive without slip.

### D. The Board Did Not Rely Upon the Doctrine of Inherency

#### 1. The Board Correctly Applied Pupp's Teachings to a POSITA in Considering Obviousness and Did Not Rely on Inherency

Laitram argues that the Board erroneously relied on inherency, concluding "[t]he Board's factual findings on Pupp's supposed inherent disclosure lacked substantial evidence, and its decision was based on a legally incorrect standard for determining obviousness via inherency." Appellant's Br. 36. Laitram has no basis for this inherency argument. *PAR Pharm., Inc. v. TWI Pharm., Inc.*, 773 F.3d 1186, 1194-96 (Fed. Cir. 2014) (explaining that inherency is a "property that is necessarily present"). The Board did not make inherency findings. The Board made perfectly clear that it determined that a POSITA would understand from Pupp's express disclosures (as discussed above) and the record evidence, including the testimony of

the experts, that Pupp describes positive drive without slip to a POSITA. Appx00044, Appx00158-00159, *citing, In re Burckel*, 592 F.2d 1175, 1179 (CCPA 1979); *In re Lamberti*, 545 F.2d 747, 750 (CCPA 1976)("[T]he question under 35 U.S.C. [§] 103 is not merely what the references expressly teach, but what they would have suggested to one of ordinary skill in the art at the time the invention was made."). The Board did not make an inherency finding, nor purport to apply any legal standard concerning inherency. *Cf. Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1347–49 (Fed. Cir. 1999) ("Inherency is not necessarily coterminous with the knowledge of those of ordinary skill in the art. Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art." (citation omitted)).

Laitram also mischaracterizes the Board's finding that Pupp did not expressly use the specific words "positive drive without slip," to argue that the Board admitted that Pupp fails to explicitly teach positive drive and therefore the Board must have relied upon the doctrine of inherency to find that Pupp disclosed positive drive without slip to a POSITA. Appellant's Br. 36, 38. Contrary to Laitram's arguments, however, the Board found that substantial evidence of record supported the finding that Pupp discloses positive drive without slip to a POSITA, not mere inherency. The Board relied upon Pupp's Background of the Invention disclosure at column 1

(“coped with the circumferential friction only, usually by a positive engagement between the drum and the inside of the conveyor belt,”); Detailed Description of the Preferred Embodiment(s) of the Invention disclosure at column 3 (“accompany, without friction, the drum 1 in the circumferential direction around the drum, merely if the contact between the drum 1 and the conveyor belt 2 involves a driving engagement,”); and Pupp’s disclosure at column 4 and FIGS 5 and 8:

> that *only those* strips 10” passing through ‘a small angular area 14: (Ex. 1003, 3:29-32) (shown in Figure 5 reproduced below) will be disengaging/engaging at any particular time… [i]n other words, even if *some* strips 10” in Pupp’s Figure 5 are shown as being disengaged from belt 14, we determine that Pupp describes a positive drive as required in element 9F because the Figure and Pupp’s accompanying text indicate that belt 14 is positively engaged and driven by many of the strips 10 shown.

Appx00042-00051, Appx0156-00160, as well as the testimony of Ashworth’s expert Mr. O’Keefe. Appx00630-00631, ¶ 83, Appx01337-01338, ¶ 83, Appx00976-00980, ¶¶ 13-16, and Appx01628-01632, ¶¶ 13-16. The Board rejected Laitram’s expert Mr. Straight’s testimony that Pupp only disclosed “a friction drive system that has no friction and thus does not drive the tower at all” (testimony that the Board found has no support in the record; Appx00045-00046, Appx00159-00160) and which was contradicted by the factual declaration of Ingmar Pupp. Appx02454-02466. As such, substantial evidence supports the Board’s finding that Pupp discloses positive drive without slip to a POSITA.

## VII. THE BOARD CORRECTLY CONSTRUED A RIDGE "TAPERED ALONG A PORTION OF ITS LENGTH" BASED ON THE INTRINSIC EVIDENCE

### A. The "Tapered" Region of the Ridge Does Not Refer Only to Portions of the Ridge in Which its Height Changes

Claim 9 recites that "the ridge in the lower segment is tapered along a portion of its length." Laitram attempts to save this claim's validity by arguing for an unsupported, overly narrow construction of "tapered" that is limited to the single embodiment shown in FIGs 2A and 2B of the '388 patent. The Board, however, correctly construed "tapered" in view of all the intrinsic evidence, the entire specification, prosecution history and cited prior art, as not merely limited to portions of the ridge in which its height changes (as shown in FIGs 2A and 2B) as Laitram argues but also "*at least including* a change in the distance from the outer surface of a 'ridge' to the axis of rotation of the drive tower along *at least a portion* of the ridge's length." Appx00033-00041. The full record supports the Board's construction.

First, the Board's construction is supported by the language of the '388 patent claim 10 which depends from claim 9. Claim 10 distinguishes between a "tapered" portion and one in which "the distance of the ridge from the vertical axis in the lower segment is constant." As the Board found, "[b]y using the term "tapered" – which refers back to the only prior use of "tapered," i.e., in element 9E – claim 10 distinguishes between a "tapered" portion of the ridge under Petitioner's understanding [i.e., including a change in the distance from the outer surface of a 'ridge' to the axis

of rotation] and one in which 'the distance of the ridge from the vertical axis in the lower segment is *constant'* (i.e., not tapered)." Appx00033, Appx00265 at 8:25-27. Thus, the claims themselves clarify that a ridge "is tapered along a portion of its length" whenever the distance of the ridge from the vertical axis is not constant.

The Board's construction of "tapered" is also supported by the use of the term in claims 1 and 2. Those claims both use tapered to describe a "skirt portion" in which the distance from the outer surface of the skirt to the axis of rotation of the drive tower varies. Appx00033-00034, Appx00265 at 7:19-22.

FIGs 4A and 4B also use the term taper as describing either a change in height of the ridge or a change in its distance from the drive tower vertical axis. "[T]he *tapering* occurs in an upper segment 54 of each drive member 14. The top of each rail is affixed to an upper rim 56. *The decreasing height of the ridge 28, <u>or</u> its distance from the drive tower's vertical axis*, in the upper segment allows the belt to disengage gradually and neatly from the drive members of the rotating tower." Appx00035-00036, Appx00263 at 4:2-10.

The '388 patent specification's description of Figures 17 and 18 also supports the Board's broader construction of "tapered." Figures 17 and 18 refer to "a skirt portion 184 th[at] *tapers* outwardly away from the tower's vertical axis 186 toward the bottom 188 of the tower" in Figure 17 and a "*tapered"* portion 197" in Figure 18. Appx00037-00038, Appx00264 at 6:53-62. As the Board found, these passages

use "tapered" to indicate the change in distance from the outer surface of the "ridge" to the axis of rotation of the drive tower. These passages do not suggest that the taper of a ridge refers exclusively to a change in "height" along the length of the ridge. Appx00038, Appx00041.

The specification further makes clear that this description of tapered structure in Figures 17 and 18 applies to ridges on Figs. 17 and 18. "Thus the spiral conveyors of FIGS. 11-18 positively drive a conveyor belt without overdrive along a helical path with drive members that engage the inside edge of the belt with a *ridge.*" (emphasis added) Appx00265 at 7:3-7.

The prosecution history including cited prior art also support the Board's broader construction of "tapered." The prior art Roinestad and Heber patents were cited during prosecution. Both use the term "tapered" in a manner that is consistent with the Board's construction of tapered as including a change in the distance of the outer surface of the ridge from the axis of rotation. Appx00038-00039, Appx00568 at 5:25-2, Appx00553 at 2:26-29.

Laitram argues that '388 patent embodiments other than FIGS. 2A and 2B are irrelevant to a construction of ridge "tapered along a portion of its length." In particular, Laitram argues that Figures 17-18 depict a "skirt portion" and this does not explain what it means for the "ridge" to be tapered. Appellant's Br. 60. This is directly contradicted by the '388 patent specification which states, that Figs. 17 and

18 have a skirt portion 184 th[at] tapers outwardly away from the tower's vertical axis, and also has ridges that engage the inside edge of the conveyor belt, which therefore necessarily are also tapered. Appx00264 at 6:53-62, Appx00262 at 2:58-60, Appx00265 at 7:3-7, and Appx00261, FIGS 17 and 18. Moreover, Laitram provides no sound reason that "tapered" has one, particularly narrow, meaning when modifying ridge, and a different meaning in every other instance in which it used in the specification and art.

Laitram's argument is also directly contradicted by Laitram's counsel Mr. Olson's admission to the Board at the oral hearing that Figure 17, which Laitram now claims is irrelevant, is covered by Claim 9 of the '388 patent, which requires a ridge "tapered along a portion of its length." Appx01865 **(**"MR. OLSON: … That's an additional – you know, claim nine has, if you will, *claim nine is more like Figure 17*.") (emphasis added). Figure 17 is relevant to construing a ridge "tapered along a portion of its length" and this embodiment should not be read out of the claim. Given the correctness of its claim construction, the Board's determination that claim 9 is obvious over Pupp and Roinestad should be affirmed.

## VIII. THE BOARD CORRECTLY FOUND THAT A POSITA WOULD HAVE BEEN MOTIVATED TO COMBINE THE TEACHINGS OF THE PRIOR ART TO OBTAIN THE KNOWN AND PREDICTABLE BENEFIT OF REDUCED TENSION AFFECTING THE CONVEYOR BELT

### A. Substantial Evidence Supports the Board's Finding a Motivation to Combine Roinestad with Roinestad2 or Pupp

The Board properly found that a POSITA would have been motivated to combine the teachings of Roinestad with Roinestad2 or with Pupp, to obtain the benefit of reduced tension affecting the conveyor belt, as expressly taught by each of these prior art references.

#### 1. The Board's Analysis Regarding a POSITA's Motivation to Combine Roinestad2 and Roinestad Applied the Correct Legal Standard and Its Conclusions Are Supported by Substantial Evidence

Motivation to combine is a fact issue, reviewed for substantial evidence. *Outdry*, 859 F.3d at 1368; *Wyers*, 616 F.3d at 1238-39. The Board applied the correct legal standards and provided evidence-supported reasons why a skilled artisan would have combined Roinestad2 and Roinestad, in support of the Board's obviousness conclusion. Ashworth provided evidence of multiple motivations to combine Roinestad2 and Roinestad that supports the Board's finding of obviousness. Appx00619-00623, Appx01327-01331, Appx00700-00702, Appx000715, Appx00718, Appx01389-01391, Appx01393, Appx01396, and Appx01398-01399.

Both Roinestad2 and Roinestad recognized the problem of tension and stress affecting the belt and wanted to reduce that tension and stress. Appx00795 at 1:14-28, 1:33-38, and 1:67-68, Appx00566 at 1:48-56**.** There were a limited number of

design choices for the surface of a spiral conveyor drive tower. It could be cylindrical, tapered or a mix of cylindrical and tapered sections. See, e.g., Appx00555, FIG. 1, Appx00558, FIG. 5, and Appx00563, FIG. 11, Appx00564, FIG 12. It was known in the prior art that a tapered surface reduces belt tension and stress. This is disclosed, for example, in Roinestad and Heber (Appx00571 at 12:53-66, 12:75-13:3, Appx00571-00572 at 13:62-64, and Appx00553 at 1:63-65) and was admitted by Laitram's expert Mr. Straight, Appx02137-02138 at 230:23-231:10. It was also well known in the prior art that the usual solution for coping with friction in the circumferential direction (and its associated tension affecting the belt) was to employ positive drive as disclosed in Pupp (Appx00547 at 1:31-34) and many other prior art positive drive patents including Roinestad2. Appx00795 at 1:33-38.

The Board, in a proper exercise of its discretion also found the testimony of Ashworth's expert Mr. O'Keefe supported by the evidence of record and more credible than that of Laitram's expert Mr. Straight. Appx00110-00112, Appx00222-00223. Contrary to the assertion of Laitram's expert, Roinestad2 never discredited, disparaged or criticized the tapered surface of Roinestad's drive, which Roinestad expressly describes as rapidly reducing belt tension. Appx00112-00116, Appx02429, Appx02431-02432, Appx02435-02437. As such, substantial evidence supports the Board's finding of a motivation to combine Roinestad2's positive drive

without slip with Roinestad's tapered drive surface to obtain the benefit of reduced tension affecting the conveyor belt.

Laitram also argues that a POSITA would not be motivated to combine Roinestad2 and Roinestad, because Roinestad2's positive drive already solved the problem of reducing tension affecting the belt. Why look to Roinestad for what is already solved? The answer is to provide a solution that provides even greater reduction of tension affecting the belt, by also employing the tension reducing tapered surface disclosed in Roinestad with the benefits of the positive drive of Roinestad2. There are a limited number of drive tower shapes, so it was an obvious design choice for a POSITA to combine the tapered shape drive with the positive drive to further reduce tension affecting the belt. *KSR*, 550 U.S. at 421 ("[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp."). Accordingly, the Court should affirm the Board's finding of motivation to combine Roinestad and Roinestad2.

#### 2. The Board's Analysis Regarding a POSITA's Motivation to Combine Pupp and Roinestad Applied the Correct Legal Standard and Its Conclusions Are Supported by Substantial Evidence

The Board applied the correct legal standards and provided evidence-supported reasons why a skilled artisan would have combined Pupp and Roinestad in

support of the Board's obviousness conclusion. Ashworth provided evidence of motivations to combine Pupp and Roinestad that supports the Board's finding. Appx00616-00619, Appx00639-00640, Appx00643-00644, Appx01324-01327, Appx01335-01336, and Appx01343-01344.

Both Pupp and Roinestad recognized the problem of tension and stress affecting the belt and wanted to reduce that tension and stress. Appx00547 at 1:22-41, Appx00566 at 1:48-56. There were a limited number of design choices for the surface of a spiral conveyor drive tower. It could be cylindrical, tapered or a mix of cylindrical and tapered sections. See, e.g., Appx00555, FIG. 1, Appx00558, FIG. 5, Appx00563, FIG. 11, and Appx00564, FIG. 12. It was known in the prior art that a tapered surface reduces belt tension and stress. This is disclosed for example in Roinestad and Heber. Appx00571-00572 at 12:53-66, 12:75-13:3, and 13:62-64, Appx00553 at 1:63-65 and was admitted by Laitram's expert Mr. Straight (Appx02137-02138 at 230:23-231:10). It was also well known in the prior art that the usual solution for coping with friction in the circumferential direction (and its associated tension affecting the belt) was to employ positive drive as disclosed in Pupp (Appx00547 at 1:31-34) and many other prior art positive drive patents. Appx02426-02427.

Laitram argues that there was no reason to solve what Pupp had already solved so there would be no motivation to combine Pupp's positive drive with Roinestad's

tapered drive surface that rapidly reduces tension affecting the belt. However, a POSITA would always want to improve the spiral conveyor design to further reduce tension affecting the belt. Friction drives are in the same field as the patents in suit. A tapered surface was known to rapidly reduce tension affecting the belt in a friction drive. As there are a limited number of design options available for the shape of a drive tower (cylindrical, tapered or mixed cylindrical/tapered) it would have been an obvious design choice to combine the tension reducing benefit of Pupp's positive drive with the rapid tension reduction provided by Roinestad's tapered surface. Appx00051-00064.

Pupp's Object and Summary of Invention expressly recognized friction contributes to increased stress affecting the conveyor belt. Appx00547, 1:24-40. A POSITA would have known and understood to combine the taper of Roinestad's drive as Roinestad expressly discloses the belt may be smoothly and economically driven under low tension and the taper rapidly dissipates tension in the belt with Pupp's positive drive, to lower belt tension and reduce the amount of stress affecting the belt. Appx00616-00619, Appx01324-01327. Accordingly, the Court should affirm the Board's finding of motivation to combine.

## IX. ASHWORTH'S CROSS-APPEAL

### A. The Board Erred in Finding that Petitioner Failed to Demonstrate that Claim 10 was Obvious over Pupp and Roinestad and Failed to

**Demonstrate that Claims 9 and 10 were Obvious over Roinestad2 and Roinestad**

The Board upheld a subset of the challenged claims by committing the legal error of not considering the teachings of Roinestad as a whole (Appx00555-00574). Instead, the Board erroneously limited its consideration of the teachings to the single embodiment of FIG. 1 below which discloses a conical shape tower with a tapered surface.




FIG. 1

Appx00555. The Board excluded from its analysis the teachings to a POSITA of Roinestad's embodiment shown in FIG. 11 and FIG. 12. As shown below, the left side of Roinestad FIG. 11 shows a drive tower wherein the distance of the drive tower surface from the vertical axis in the lower segment is constant below the portion that is tapered.




Appx00563, Fig. 11 (left side), Appx00564, Fig 12. A correct application of the undisputed teachings of the entirety of Roinestad to a POSITA compels reversal of the Board's decision that Ashworth did not demonstrate that: (1) claim 10 would have been obvious based on Pupp and Roinestad; and (2) claims 9 and 10 would have been obvious based on Roinestad2 and Roinestad.

### 1. Pupp and Roinestad Render Dependent Claim 10 Obvious

The Board correctly found that independent claim 9 of the ‘388 patent was obvious over Pupp and Roinestad. Claim 10, which depends from claim 9 adds the further limitation “wherein the distance of the ridge from the vertical axis in the lower segment is constant below the portion that is tapered.” Appx00265 at 8:25-27 (Claim 10). Despite the ruling with respect to claim 9, the Board found that Petitioner had not demonstrated that claim 10 was obvious over Pupp and Roinestad. Claim 9 was invalidated, in part, by Roinestad’s FIG. 1 embodiment disclosing a conical tower with a tapered surface. In considering the obviousness of claim 10, the Board erred in believing it was constrained to consider the single embodiment of Roinestad FIG. 1, rather than applying the teachings to a POSITA of the entirety of Roinestad. Appx00078-00081.

In addition to FIG. 1’s conical drive tower embodiment, it is undisputed that Roinestad also disclosed to a POSITA the embodiment of FIG. 11 and FIG. 12, which teaches as a design option, the use of mixed cylindrical and tapered sections in a drive tower. Appx00563-00564. In particular, the left side of FIG. 11 and FIG. 12 show a drive tower “wherein the distance from the vertical axis in the lower segment is constant below the portion that is tapered”

Fig. 11.




*Id.*, Appx00631-00634**.** Laitram never disputed that the further limitation of dependent claim 10 "wherein the distance of the ridge from the vertical axis in the lower segment is constant below the portion that is tapered" was disclosed to a POSITA by Roinestad's FIG. 11 or FIG. 12 embodiment. See Appx00910 ("For the same reasons set forth above in the discussions of claim 9, claim 10 is not obvious in Grounds I-V.").

In reaching its decision, the Board limited its understanding that the prior art "modified system" obtained from combining the teachings of Pupp and Roinestad, in the context of the challenge to claim 9, was "generally configured like the conical drum 12 in Figure 1 of Roinestad." Appx00079. The Board, in considering the validity of claim 10, should not have limited its consideration of Roinestad to only

the embodiment of FIG. 1, even though that embodiment, when combined with Pupp rendered claim 9 obvious. A prior art reference is a reference for all that it teaches a POSITA. *In re Heck*, 699 F.2d at 1333 (prior art references "are part of the literature of the art, *relevant for all they contain*.") (emphasis added); *In re Applied Materials*, 692 F.3d at 1298-99 ("A reference must be considered for everything that it teaches, not simply the described invention or a preferred embodiment.").

Roinestad expressly teaches to a POSITA that a spiral conveyor drive tower, could have a limited number of shapes that are: conical (FIG. 1), cylindrical (FIG. 5) or mixed conical/cylindrical (FIG. 11, FIG. 12). Roinestad further teaches that the alternative design option of the mixed conical/cylindrical shape has "several advantages" including that the "tapered portion" of the mixed conical/cylindrical (FIG. 11 or FIG. 12) drive tower provides "a more rapid lowering of the belt tension" (Appx00563-00564, FIGs. 11 and 12, Appx00571-00572 at 12:53-66, 12:75-13:3, and 13:62-64) and that "the diminishing diameter of the drum tends to remove tension as the belt progresses through successive loops." Further, the Board properly found that a POSITA would have a motivation to combine Roinestad with Pupp with a reasonable expectation of success. Appx00056-00063. As such, the combination of Roinestad with Pupp renders claim 10 obvious to a POSITA as a mere design choice from a limited number of design options. Appx00631-00634.

The Board correctly found that the combination of Pupp and Roinestad disclosed all the limitations of claim 9 of the 388 patent and rendered claim 9 obvious to a POSITA. However, the Board erred when it required that the further limitation of dependent claim 10 of the '388 Patent had to be disclosed to a POSITA by combining only the teachings of Roinestad's FIG.1 with Pupp rather than by the teachings of Roinestad as whole, including the FIG.11 and FIG. 12 embodiment. *Merck & Co. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989) ("the fact that a specific embodiment is taught to be preferred is not controlling, since all disclosures of the prior art . . . must be considered."). Accordingly, the Board's finding that Petitioner failed to demonstrate that claim 10 was obvious over Pupp and Roinestad should be reversed.

### 2. Roinestad2 and Roinestad Render Claims 9 and 10 Obvious

The Board repeated and compounded this same error when it found, in a cursory manner, that the Petitioner had not demonstrated that claims 9 and 10 of the '388 patent were obvious over Roinestad2 and Roinestad. Appx00102-00103. As discussed above, the Board limited its obviousness determination to consideration of a single embodiment (the Fig. 1 conical drive tower embodiment) taught by Roinestad, rather than considering what a POSITA would have understood from Roinestad's teachings as a whole, including the FIG. 11 and FIG. 12 embodiment

disclosing drive towers having mixed cylindrical and tapered sections. Appx00103 ("Petitioner has not adequately explained how one shape of the modified device of Roinestad2 and Roinestad satisfies all of the claim elements."). This was error. *See, e.g., EWP Corp. v. Reliance Universal Inc.*, 755 F.2d 898, 907 (Fed. Cir. 1985) ("A reference must be considered for everything it teaches by way of technology and is not limited to the particular invention it is describing and attempting to protect. On the issue of obviousness, the combined teachings of the prior art as a whole must be considered.").

As discussed above, it is undisputed that Roinestad discloses to a POSITA a limited number of design options for the shape of a spiral conveyor drive tower, conical (FIG. 1), cylindrical (FIG. 5) and mixed conical/cylindrical sections (FIG. 11 and FIG. 12). A POSITA would have understood, from Roinestad's teachings taken as a whole in combination with Roinestad2's positive drive teachings, that the prior art disclosed all of the elements of the claims and provided the motivation to combine the prior art teachings to render claims 9 and 10 obvious as a mere design choice from a limited number of design options. (Appx00694-00707).[5] The Board failed to consider and apply Roinestad's teachings as a whole including the

[5] Laitram never disputed that Roinestad disclosed the further limitation of dependent claim 10, but merely argued claim 10 was not obvious over Roinestad2 and Roinestad for the same reasons Laitram argued claim 9 was not obvious. Appx00910.

teachings of the FIG. 11 and FIG. 12 embodiment. Accordingly, the Board's finding that Petitioner failed to demonstrate that Claims 9 and 10 of the '388 patent would have been obvious over Roinestad2 and Roinestad was erroneous and should be reversed.

## X. CONCLUSION

Accordingly, the Board's Final Written Decisions findings that Petitioner had not proven claims 9 and 10 of the '388 patent obvious over Roinestad2 and Roinestad and had not proven claim 10 obvious over Pupp and Roinestad should be reversed and all other findings of the Final Written Decisions affirmed.

Respectfully submitted,

Dated: May 9, 2022

/s/ Robert F. Altherr, Jr.

Robert F. Altherr, Jr.
John R. Hutchins
Christopher B. Roth
BANNER & WITCOFF, LTD.
1100 13th Street, NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824–3000

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type–volume limitation of Federal Rule of Appellate Procedure 32(a) or Federal Circuit Rule 28.1. This brief contains 15,325 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14–point.

Dated: May 9, 2022

/s/ Robert F. Altherr, Jr.

Robert F. Altherr, Jr.
BANNER & WITCOFF, LTD.
1100 13th Street, NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824–3000

*Attorney for Appellee Ashworth Bros. Inc.*