No. 2022-1044, 2022-1045, 2022-1084

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

LAITRAM, LLC,

*Appellant*,

v.

ASHWORTH BROS., INC.,

*Cross-Appellant.*

Appeal from the United States Patent and Trademark Office – Patent Trial and Appeal Board in Inter Partes Review Nos. IPR2020-00593 and IRP2020-00594

# APPELLANT'S RESPONSE AND REPLY BRIEF

JULY 20, 2022

LAUREN J. DREYER
BAKER BOTTS L.L.P.
700 K St, NW
Washington, DC 20001
(202) 639-7823 (telephone)
lauren.dreyer@bakerbotts.com

MICHAEL HAWES
JENNIFER CARTER
LORI DING
BAKER BOTTS L.L.P.
910 Louisiana St
Houston, TX 77002
(713) 229-1234 (telephone)
michael.hawes@bakerbotts.com
jennifer.carter@bakerbotts.com
lori.ding@bakerbotts.com

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1044, 22-1045, 22-1084

**Short Case Caption** Laitram, L.L.C. v. Ashworth Bros., Inc.

**Filing Party/Entity** Appellant, Laitram, L.L.C.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/06/2021

Signature: /s/ Lauren J. Dreyer

Name: Lauren J. Dreyer

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Laitram, L.L.C. | | Laitram Group, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Arne M. Olson<br>Olson & Cepuritis, Ltd. | Shawn E. Duckworth<br>Olson & Cepuritis, Ltd. | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Laitram, L.L.C. et al. v. Ashworth Bros., Inc. 1:19-cv-01130 (D. Del.) | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

I. INTRODUCTION ....... 1

II. JURISDICTIONAL STATEMENT ....... 2

III. COUNTER-STATEMENT OF THE CROSS-APPEAL ISSUES ....... 2

IV. COUNTER-STATEMENT OF THE CASE ....... 3

V. SUMMARY OF CROSS-APPEAL ARGUMENT ....... 6

VI. REPLY BRIEF FOR LAITRAM'S APPEAL ....... 7

A. The Board Erred in Construing "Without Slip" ....... 7

1. Ashworth Ignores the Intrinsic Evidence That Supports Laitram's Construction ....... 7

2. Ashworth Mischaracterizes the Extrinsic Evidence to Support Its Construction ....... 9

3. The Similar Analysis Between the Institution Decision and Final Written Decision Does Not Excuse the Board Reaching a Substantively Different Construction ....... 16

B. Neither Roinestad2 Nor Pupp Disclose "Without Slip" ....... 18

1. There Is No Forfeiture for Roinestad2 Because Laitram Raised the "Occasional Slippage" Argument during the Proceedings ....... 18

2. Ashworth Concedes That Roinestad2 Discloses Positive Drive with "Occasional Slippage" ....... 21

3. There Is No Forfeiture for Pupp Because Laitram Always Contested the "Positive Drive Without Slip" Limitation ....... 24

4. The Board Provided No Rationale for Why Pupp Discloses "Without Slip" ....... 25

C. Ashworth Refuses to Acknowledge the Board's Inherency Finding for Pupp ....... 26

D. The Board's Inconsistent Findings Preclude Any Motivation to Combine Roinestad with Roinestad2 or Pupp ....... 32

1. Ashworth Does Not Contest That the Board's Findings on Motivation to Combine Are Contradictory ..............................32

2. There Is No Affirmative Motivation to Modify Roinestad2 or Pupp with Roinestad Given the Board's Inconsistent Findings ........................................................................33

E. Ashworth's Construction of a "Ridge" That Is "Tapered Along a Portion of Its Length" Contradicts the Claims and Intrinsic Record ..38

VII. RESPONSE BRIEF TO ASHWORTH'S CROSS-APPEAL .......................45

A. Ashworth's "Cross Appeal" of Claim 9 Is Procedurally Improper ....45

B. Substantial Evidence Supports the Board's Determination That Ashworth Failed to Prove Claims 9 and 10 Obvious ..........................46

1. Ashworth Fails to Dispute the Board's Findings That the Petition Failed to Adequately Explain the Obviousness Theories ........................................................................47

2. Ashworth Ignores the Board's Analysis That the Same Set of Claims Cannot Be Multiple Shapes at Once ............................49

VIII. CONCLUSION ........................................................................52

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016) ....................35, 36

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
632 F.3d 1246 (Fed. Cir. 2011) ....................7

*Aventis Pharma S.A. v. Hospira, Inc.*,
637 F.3d 1341 (Fed. Cir. 2011) ....................2, 44

*Bailey v. Dart Container Corp.*,
292 F.3d 1360 (Fed. Cir. 2002) ....................45

*Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*,
533 F.3d 1362 (Fed. Cir. 2008) ....................39

*Black & Decker, Inc. v. Positec USA, Inc.*,
646 F. App'x 1019 (Fed. Cir. 2016) ....................34, 36

*Corning v. Fast Felt Corp.*,
873 F.3d 896 (Fed. Cir. 2017) ....................18

*Cutsforth, Inc. v. MotivePower, Inc.*,
636 F. App'x 575 (Fed. Cir. 2016) ....................35, 36

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015) ....................8

*EmeraChem Holdings, LLC v. Volkswagen Grp. of Am., Inc.*,
859 F.3d 1341 (Fed. Cir. 2017) ....................10

*EWP Corp. v. Reliance Universal Inc.*,
755 F.2d 898 (Fed. Cir. 1985) ....................49

*Finnigan Corp. v. ITC*,
180 F.3d 1354 (Fed. Cir. 1999) ....................25

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ....................19

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)....................................................................................50

*Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*,
865 F.3d 1348 (Fed. Cir. 2017) ..................................................................32

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) ..................................................................21

*In re Applied Materials, Inc.*,
692 F.3d 1289 (Fed. Cir. 2012) ..................................................................50

*In re Google Tech. Holdings*,
980 F.3d 858 (Fed. Cir. 2020) ....................................................................21

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ....................................................28, 37, 49

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ...........................................................26, 31

*In re Rouffet*,
149 F.3d 1350 (Fed. Cir. 1998) ..................................................................34

*In re Van Os*,
844 F.3d 1359 (Fed. Cir. 2017) ..................................................................35

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ...........................................................47, 48

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) ..................................................................25

*Koninklijke Philips N.V. v. Google LLC*,
948 F.3d 1330 (Fed. Cir. 2020) ..................................................................26

*L'Oréal USA, Inc. v. Olaplex, Inc.*,
844 F. App'x 308 (Fed. Cir. 2021) ......................................................20, 21

*L.E.A. Dynatech, Inc. v. Allina*,
49 F.3d 1527 (Fed. Cir. 1995) .............................................................19, 20

*M & K Holdings, Inc. v. Samsung Elecs. Co.*,
985 F.3d 1376 (Fed. Cir. 2021) ....................28, 37

*Merck & Co. v. Biocraft Labs., Inc.*,
874 F.2d 804 (Fed. Cir. 1989) ....................49

*Microsoft Corp. v. Biscotti, Inc.*,
878 F.3d 1052 (Fed. Cir. 2017) ....................19

*Oren Techs., LLC v. Proppant Express Investments LLC*,
No. 2019-1778, 2021 WL 3120819 (Fed. Cir. July 23, 2021) ....................10, 38

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ....................8, 15

*Power Probe Grp., Inc. v. Innova Elecs. Corp.*,
No. 2021-2354, 2022 WL 1089910 (Fed. Cir. Apr. 12, 2022)....................24

*Qualcomm Inc. v. Intel Corp.*,
6 F.4th 1256 (Fed. Cir. 2021) ....................24

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
8 F.4th 1285 (Fed. Cir. 2021) ....................9

*Shire Dev., LLC v. Watson Pharms., Inc.*,
787 F.3d 1359 (Fed. Cir. 2015) ....................15

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
374 F.3d 1151 (Fed. Cir. 2004) ....................2, 46

*Voda v. Cordis Corp.*,
536 F.3d 1311 (Fed. Cir. 2008) ....................7

*World Class Tech. Corp. v. Ormco Corp.*,
769 F.3d 1120 (Fed. Cir. 2014) ....................38

**STATUTES**

35 U.S.C. § 312(a) ....................47

# I. INTRODUCTION

On each issue in Laitram's appeal, Ashworth ignores relevant arguments or mischaracterizes evidence. Ashworth ignores the intrinsic evidence supporting Laitram's construction of "without slip," including the claim language made superfluous by the Board's construction. Instead, Ashworth addresses only a single disclosure in the specification and mischaracterizes the extrinsic evidence—including turning a blind eye to the context of a statement from Laitram's expert (Mr. Straight). Ashworth further passes over the Board's improper finding of inherent disclosure in Pupp and refuses to engage with the inherency arguments or the record evidence.

Ashworth perpetuates this tactic in responding to Laitram's arguments on motivation to combine, disregarding the Board's contradictory findings. Those contradictory findings preclude the Board's finding of a motivation to combine Roinestad with Roinstad2 or Pupp, as no substantial evidence supports such a conclusion in view of the contradiction.

And on the construction of a "ridge" that is "tapered along a portion of its length," Ashworth has no response to the surplusage resulting from the Board's construction. Again, Ashworth ignores intrinsic evidence in favor of plucking a quote out of context and casting it as an admission in support of Ashworth's construction.

Finally, on Ashworth's cross-appeal, Ashworth spins the Board's analysis as improperly limiting a prior art reference to a single embodiment. In actuality, the Board simply limited Ashworth's arguments to those it fairly included in its Petition and found them lacking adequate explanation.

## II. JURISDICTIONAL STATEMENT

The Court lacks jurisdiction over Ashworth's cross-appeal of claim 9 of the '388 patent. Although the Board determined claim 9 is obvious over Pupp and Roinestad, Ashworth cross-appeals the Board's determination that claim 9 is not obvious over Roinestad2 and Roinestad. Ashworth's cross-appeal, even if conditional, "is improper because, if successful, it would not expand the scope of the judgment in [Ashworth's] favor." *Aventis Pharma S.A. v. Hospira, Inc.*, 637 F.3d 1341, 1344 (Fed. Cir. 2011) (holding conditional cross-appeals on invalidity improper); *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1156 (Fed. Cir. 2004) (finding no jurisdiction over improper cross appeal).

## III. COUNTER-STATEMENT OF THE CROSS-APPEAL ISSUES

1. Whether the Board correctly determined that the petitioner, Ashworth, failed to satisfy its burden of proving claim 10 of the '388 patent obvious over Roinestad2 and Roinestad and over Pupp and Roinestad, when Ashworth failed to explain in its Petition how its proposed modified device from the combination of references would simultaneously incorporate contradictory features.

## IV. COUNTER-STATEMENT OF THE CASE

Claim 9 of the ’388 patent requires that the drive tower has a non-cylindrical shape (“distance . . . varies”) and that the ridge has a variable height (“ridge . . . tapered”). Appx00265, 8:15-21. Claim 10 depends from claim 9 and adds the requirement that another portion of the drive tower has a “constant” (non-varying) shape. *Id.* at 8:25-27. Pupp and Roinestad2, however, teach only a cylindrical drive tower and flat, non-tapered elements that are supposed “ridges.” *See* Appx00544, Fig. 5 (Pupp); Appx00789, Fig. 3 (Roinestad2). As a result, none of the requirements of claims 9 and 10 for the shape of the drive tower and that of the ridge are present in Pupp or Roinestad2. Therefore, to map the claims to the prior art, Ashworth had to point to the disclosures in Roinestad.

In challenging claim 9 based on the Pupp and Roinestad combination, Ashworth’s Petition proposed to modify Pupp with the conical drive tower depicted in Roinestad’s Figure 1. Appx00024-00027. But, in challenging claim 10, which depends from claim 9 and therefore includes all the limitations of claim 9, Ashworth’s Petition deviated from Roinestad’s Figure 1 shape without explanation. For claim 10, Ashworth proposed to modify Pupp with the mixed conical-and-cylindrical shape disclosed in Roinestad’s Figure 11 (left). Appx00079-00081. *Compare* Appx00555, Fig. 1, *with* Appx00563, Fig. 11 (left). As a result, Ashworth’s Petition tried to mix-and-match the mutually exclusive drive tower

shapes from Roinestad's Figures 1 and 11 for the same claimed embodiment. But it failed to explain how the modified device that relied on Figure 1 for claim 9 could be further modified to rely on Figure 11's different shape for dependent claim 10.

The Board notified Ashworth in the Institution Decision about these deficiencies in the Petition. Appx00079 (citing Appx00834-00835). The Board explained that it understood "the drive tower of the modified system in the context of the challenge to claim 9 in this ground to be configured akin to conical drum 12 in Figure 1 of Roinestad." Appx00834-00835. But it also understood from the Petition that "the drive tower of the modified system in the context of this challenge to claim 10 to be configured akin to driving drum 301 on the left side of Figure 11 in Roinestad." Appx00834. Because "[c]laim 10, however, depends from claim 9, and thus includes all the limitations of claim 9," the Board wrestled with "how to reconcile these issues" and "encouraged" Ashworth to "further develop these issues during trial." Appx00834-00835.

In its Final Written Decision, the Board noted that Ashworth failed to address the Board's concern in either its Reply or at the oral hearing when the panel specifically asked about this issue. Appx00080 (citing Appx00953-00954 (Reply); Appx01833 (Tr. 28:13-24)). Because Ashworth had not "explained, with sufficient particularity, the proposed modified device in the context of claim 10 to demonstrate how such a modified device satisfies both the requirements of claim 9 *and also* those

of claim 10 (which depends from claim 9)," the Board concluded that Ashworth had not met its burden in proving claim 10 would be obvious based on Pupp and Roinestad. Appx00080-00081.

Ashworth repeated that error in its arguments for claims 9 and 10 under the Roinestad2 and Roinestad combination. Ashworth proposed combining Roinestad2 with Roinestad's conical tower of Figure 1 for one element of claim 9 and with Roinestad's mixed conical-and-cylindrical drum of Figure 11 for a different element of the same claim. Appx00101-00102; Appx00351-00354. The Board asked Ashworth during the oral hearing for the specific shape of the drive tower on which Ashworth relied for claim 9. Appx00102 (citing Appx01837 (Tr. 32:5-12)). Ashworth however could not identify a specific shape, instead offering up three different drive towers shapes from Roinestad's Figures 1 (conical) and 11 (mixed cylindrical with top conical portion and mixed cylindrical with bottom conical portion). Appx00102-00103; Appx01837 (Tr. 32:5-12). Thus, the Board concluded, Ashworth had not "adequately explained how one shape of the modified device of Roinestad2 and Roinestad satisfies all of the claim elements of claim 9." Appx00103. As a result, the Board determined Ashworth failed to prove either claims 9 or 10 obvious based on Roinestad2 and Roinestad. *Id.*

## V. SUMMARY OF CROSS-APPEAL ARGUMENT

Although Ashworth accuses the Board of limiting Roinestad to the teachings of the Figure 1 embodiment, Ashworth omits that the Board concluded that Ashworth failed to meet its burden of proof when its Petition lacked adequate explanation for its proposed combination. Its Petition identified only the Figure 1 embodiment for claim 9 under the Pupp-Roinestad combination. When Ashworth cited a different figure for dependent claim 10, the Board correctly concluded that Ashworth had failed to adequately explain its mix-and-match approach to drive tower shapes for related claims in the Petition. Appx00026.

Ashworth's Petition was even more bereft of explanation for the Roinestad2-Roinestad combination. The Petition cited two different Roinestad figures (Figures 1 and 11) to meet two limitations in a single claim (claim 9). Because Ashworth had not adequately explained how the proposed device could incorporate features from two mutually exclusive drive tower shapes (conical and mixed conical-and-cylindrical) in order to meet the limitations of a single claim, the Board rightly determined that Ashworth failed to meet its burden to prove claim 9 (and therefore claim 10) obvious over the combination.

## VI. REPLY BRIEF FOR LAITRAM'S APPEAL

### A. The Board Erred in Construing "Without Slip"

#### 1. Ashworth Ignores the Intrinsic Evidence That Supports Laitram's Construction

Ashworth fails to engage with the intrinsic evidence that supports Laitram's construction of "without slip" to mean "no slip." *See* Laitram Br. 24-29. Instead, Ashworth assumes without support that all positive-drive systems operate without slip. *See* Ashworth Br. 41 ("[I]t is factually true that positive drives operate without slip."). But Ashworth makes no attempt to grapple with actual claim language. Ashworth disregards that claims 8 and 11 in the '388 patent use only the term "positive drive" whereas claim 9 refers to "positive drive without slip," signifying that "without slip" has independent meaning. Laitram Br. 26-27 (citing *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011); *Voda v. Cordis Corp.*, 536 F.3d 1311, 1320 (Fed. Cir. 2008)). Ashworth also ignores that equating "positive drive" with "without slip" renders claim language in both claims 9 and 11 superfluous. *See* Laitram Br. 25-26.

Rather than acknowledge this express distinction in the claim language, Ashworth relies only on a single sentence in the specifications, which recites: "Because there is positive engagement between regularly spaced drive structure on the cage and regularly spaced edge structure on the inside edge of the belt, there is no slip as in overdrive systems." Appx00262, 1:41-45; Appx00277, 1:55-59. But

Ashworth fails to address the governing principle that the claim language controls. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc). In addition, Ashworth overlooks the surrounding context for that sentence, which describes "regularly spaced drive structure on the cage" and "regularly spaced edge structure on the inside edge of the belt" that improve upon friction-drive systems in achieving no slip. Appx00262, 1:41-45; Appx00277, 1:55-59; Laitram Br. 28. And Ashworth overlooks the specifications' other descriptions of positive drive without any mention of slip, which also suggests that "without slip" is not simply synonymous with "positive drive." Laitram Br. 27 (citing Appx00262, 1:5-8, 1:38-41; Appx00263, 3:8-10, 3:51-54; Appx00277, 1:19-22, 1:52-55; Appx00278, 3:25-27, 4:1-4).

Rather than respond to Laitram's argument that the Board rendered "without slip" superfluous, Ashworth tries to flip the burden of proof on Laitram, asserting that the Board "simply responded to the arguments Laitram actually raised in the Patent Owner Responses." Ashworth Br. 35. As Laitram explains below, Laitram has not forfeited any arguments that neither Pupp nor Roinestad2 disclose "without slip." *Infra* Section VI.B. And as petitioner, Ashworth bears the ultimate burden of showing that Pupp and Roinestad2 disclose positive drive that occurs "without slip." *See Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015). Ashworth failed to carry its burden. That Laitram's Patent Owner

Responses contained no arguments specifically distinguishing "essentially no slip" from "no slip" is hardly surprising, as Laitram was not on notice of the Board's "essentially" construction until the Final Written Decision—a point Ashworth ignores.

### 2. Ashworth Mischaracterizes the Extrinsic Evidence to Support Its Construction

Because Ashworth cannot rely on the intrinsic evidence to support the Board's construction of "without slip," it points to extrinsic evidence, including other prior-art references and expert testimony, to try to override the intrinsic evidence. The sum of this evidence, according to Ashworth, proves that every positive-drive system operates without slip. Ashworth Br. 41. But extrinsic evidence rarely, if ever, can override the clear import from the intrinsic record. *See Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("[W]e resort to extrinsic evidence to construe claims only if it is consistent with the intrinsic evidence."). And this is not one of those rare cases, as Ashworth resorts to mischaracterizations of the extrinsic evidence to reach its construction.

First, Ashworth cites four prior art references—U.S. Patent No. 8,302,764 (Johnson); U.S. Patent No. 4,944,162 (Lang); G.B. Patent No. 1,377,498 (Ballenger); U.S. Patent No. 4,852,720 (Roinestad '720)—for supposedly disclosing spiral conveyor systems that are positively driven without slip. *See* Ashworth Br. 11-13. But Ashworth omits that the Board expressly decided not to rely on these

references in its Final Written Decisions—a finding that Ashworth does not challenge. Appx00125 ("we do not rely on them in this Decision"); *see also* Ashworth Br. 11-13. Under this Court's precedent, the Board's findings on extrinsic evidence may receive deference, but no such findings were made. And Ashworth included none of these references in its Petition as support for its belated argument that all positive drive occurs without slip. *See* Appx00932 (Ashworth identifying the four disputed references (Ex. 1027-1030) for the first time with its Reply). The Board therefore could not have relied on—and did not rely on—references that were unasserted for meeting a particular claim limitation. *See EmeraChem Holdings, LLC v. Volkswagen Grp. of Am., Inc.*, 859 F.3d 1341, 1350 (Fed. Cir. 2017) (holding patent owner lacked sufficient notice that Board would rely on prior art reference to invalidate a particular claim when petition failed to cite that reference for that claim); *see also Oren Techs., LLC v. Proppant Express Investments LLC*, No. 2019-1778, 2021 WL 3120819, at *4 (Fed. Cir. July 23, 2021) (nonprecedential) (describing *Emera*: "We have held that the Board erred when it relied on a prior art reference that was unasserted for meeting a particular limitation, even though the passage from the reference that the Board relied on for disclosing the limitation had been block quoted in the petition and institution decision, in a different context."). Ashworth's citations to these four references on appeal are irrelevant and should be disregarded.

Even still, none stand for the proposition that *all* positive-drive systems operate without slip. Johnson notes that "positive drive" as disclosed in the patent describes a belt "engaged with or driven by a meshing drive structure on the drum that prevents the belt from slipping in the area of engagement." Appx002358, 5:55-59. Similarly, Ballenger describes a positive engagement that "push[es] the inner edge of the belt forwardly without slippage." Appx02381, 5:22-27. But Lang discloses positive drive without discussing slip. *See* Appx02371, 3:28-34. And Roinestad '720, like Roinestad2, discloses that the individual rod ends experience "occasional slippage," but the "occasional slippage does not interfere with the positive character of the drive." Appx02404, 9:14-19. The varied disclosures from these four references do not establish that all positive-drive systems operate without slip.

Second, Ashworth seeks to trump all the claim construction evidence with a single question-and-answer from Laitram's expert, Mr. Michael Straight, which is divorced from context. In his deposition, Mr. Straight provided the following testimony:

> Q. But if you're using positive engagement, you're not going to have any slip, are you?
>
> A. Correct.

Appx01974 (67:17-20). Having found its supposed smoking gun, Ashworth repeats the same two sentences from Mr. Straight's deposition seven times in its brief

without providing the surrounding context that clarifies Mr. Straight's comment. *See* Ashworth Br. 15, 37, 38, 41, 45, 49. The Board never adopted Ashworth's interpretation of this cherry-picked expert testimony. In fact, the Board never even noted this "admission" in its decisions.

When read in context, the transcript reveals no actual admission from Mr. Straight that all positive-drive systems have no slip. Instead, Mr. Straight discussed the difference between positive drive in the prior art, which tolerated some slip, and positive drive in the patents-at-issue, which tolerate no slip. *See, e.g.*, Appx02124 (Tr. 217:14-24) ("Roinestad2 taught positive drive with slip allowed; it did not teach positive drive without slip."). And in his deposition, he often used the term "positive drive" to refer to the systems that positively engage the belt without slip, *i.e.*, true positive drive, but distinguished this type of positive drive from "near positive drive" systems that permit slip.

For example, Mr. Straight described his understanding of a true positive-drive system: one that occurs without slip because the drum and the belt are driven at the same speed. *See* Appx01744, ¶ 117 ("[P]ositive drive has no slip because the drum and the belt are fully engaged."); Appx01938-01939 (Tr. 31:20-32:4) ("What is your understanding of 'positive-drive spiral conveyor'? . . . A. When positive drive on a spiral conveyor is fully achieved, there's no relative velocity between the speed of the inside edge of the belt and the speed of the driving element on the cage. They are

-- they are locked together positively."); Appx01954 (Tr. 47:12-18) ("Now, if the drum and the conveyor belt are driven at the same speed, there is no slip, correct? A. Correct. Q. And that's what positive drive provides; isn't that correct? A. Correct."); Appx01958 (Tr. 51:7-10) ("So in positive-drive systems, there's no difference in the relative speeds between the drum and the belt? A. Correct.").

For other prior-art systems that attempted to achieve positive drive but failed to do so, Mr. Straight referred to them as "near" positive drive and explained that they fell short of true positive drive. For example, when referring to Roinestad2, which permits "occasional slippage," Mr. Straight consistently referred to its system as "near positive drive." *See, e.g.*, Appx01739-01740, ¶ 106; Appx01775, ¶ 164 ("Gerry Roinestad did not teach positive drive. Roinestad2 taught *near positive drive* . . . ." (emphasis added)); Appx02124 (Tr. 217:14-16) ("Roinestad2 taught *positive drive with slip allowed*; it did not teach positive drive without slip." (emphasis added)); Appx02166 (Tr. 259:13-19) ("A. It's how -- this is how we commonly referred to the conveyor that's patented in Roinestad2. Q. Okay. And so it was a positive-drive conveyor, correct? A. It was -- it was *near positive drive*. *It allowed some slip*." (emphases added)). Mr. Straight's testimony consistently distinguished "near" positive-drive references, like Roinestad2, from true positive drives. *See, e.g.*, Appx01947 (40:12-24) ("[T]he things patented as positive drive prior to Bogle and Talsma did not actually achieve it. The engagement was not

maintained. . . . Roinestad2 . . . talks about something positively engaging the edge of the belt but . . . letting it slip."); Appx02012 (Tr. 105:6-12) ("Roinestad2 is known, but Roinestad2 acknowledges slip. So I wouldn't characterize it as a solution by a positive engagement. . . . [I]t's just some progress toward that."); Appx02166 (Tr. 259:13-19) (referring to Roinestad2 as "near positive drive" because it "allowed some slip").

Ashworth concentrates on two sentences from Mr. Straight's testimony without providing this surrounding context or grappling with his nuanced discussion of true positive drive versus "near positive drive." In fact, Mr. Straight's quoted response was in the context of *Laitram's* Intralox DirectDrive system (DDS), which Laitram contends practices the challenged claims and is a "true" positive drive system. For example, Ashworth's counsel began by discussing an Intralox video that explains Laitram's DDS. Appx01973 (Tr. 66:16-25) (asking about DDS). When counsel then asked whether there is any slip when using positive engagement ("But if you're using positive engagement, you're not going to have any slip, are you?"), Mr. Straight answered the question in the context of that DDS system—in which there is no slip ("Correct."). Appx01974 (Tr. 67:17-20).

This reading is supported by Mr. Straight's answer to counsel's next question about the mechanics of tension. While the question did not specify between general spiral conveyor systems or Laitram's DDS, Mr. Straight answered only as to DDS:

> Q. All right. So if you're not going to have any slip because of positive engagement, right, you're not going to get that additional tension that -- that you're -- you're referring to from -- from the friction when you reduce the diameter to reduce the belt tension; isn't that right?
>
> A. On the -- on the *positively engaging DirectDrive* with the tension reduction zone, that reduction diameter reduces the tension.

Appx01974-01975 (67:21-68:6) (emphasis added). This context clarifies that Mr. Straight admitted to nothing more than Laitram's DDS practicing the "positive drive without slip" limitation as a true positive-drive system.

And although Mr. Straight's one-word answer should not be accepted as a clear agreement that all positive-drive systems are without slip given this context, nevertheless, Laitram never agreed or adopted such a statement as its position on the proper construction of "positive drive without slip" in the claims. Instead, Laitram argued that some systems that are deemed "positive drive," such as Roinestad2, have slippage. Appx01668-01670. In any event, because claim construction is a question of law for the Court, an expert's misconstrued testimony is entitled to significantly less (if any) weight as extrinsic evidence. *See Shire Dev., LLC v. Watson Pharms., Inc.*, 787 F.3d 1359, 1365 (Fed. Cir. 2015) ("[A] court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'" (quoting *Phillips*, 415 F.3d at 1318)).

Because Laitram's construction is fully supported by the intrinsic evidence, and is not outweighed by the extrinsic evidence, the Court should adopt Laitram's construction.

#### 3. The Similar Analysis Between the Institution Decision and Final Written Decision Does Not Excuse the Board Reaching a Substantively Different Construction

Ashworth excuses the Board's erroneous change in construction of "without slip" by pointing out that the Board's construction relied on the same analysis from the Institution Decision, even though it ultimately reached a different construction. Ashworth Br. 34; Appx00012-00015, Appx00140-00143. And Ashworth argues that Laitram lost its chance to challenge the Board's new construction because Laitram did not dispute that initial analysis from institution. Ashworth Br. 34. This is nonsensical. When Laitram agreed with the Board's initial analysis, the Board concluded that "without slip" means "no slip." Appx00827 (Institution Decision); Appx00861 (Patent Owner Response); *see also* Appx001481; Appx01515-01516. Laitram had no reason to challenge the Board's initial (and correct) construction—nor does it on appeal. Relying on the same analysis but reaching a different (and incorrect) conclusion—construing "without slip" to mean "*essentially* no slip"—is what Laitram challenges as improper on appeal. Appx0015 (emphasis added); Appx00143.

Contrary to Ashworth's argument, this change in construction is not meaningless because "essentially no slip" does not apply to the facts in the same way as the Board's initial construction of "no slip." *See* Ashworth Br. 39-40. A system that operates with "essentially no slip" allows for certain amounts of slip, such as the "occasional slippage" disclosed in Roinestad2. Laitram Br. 35-36. This new construction therefore permitted the Board to ignore or argue around Laitram's evidence that Roinestad2 discloses some slip. *See id.*; *see also* Appx00868-00870; Appx01523-01525; Appx01668-01670.

Laitram has not forfeited any arguments that Pupp or Roinestad2 disclose some slip. *Infra* Section VI.B. As Laitram explained in its Principal Brief, the Board's change in construction prejudiced Laitram. Laitram Br. 35-36. Laitram was unable to rebut the conclusion that Ashworth draws from the Board's construction that "it is factually true that positive drives operate without slip." Ashworth Br. 41. Laitram disputes that this is "factually true," and so this construction, irrefutably equating the two claim elements ("positive drive" and "without slip"), is a question of law based on underlying factual issues that were not developed below. In any event, the record evidence refutes the Board's construction that all positive drive occurs without slip. *See, e.g.*, Appx00798, 8:46-50 (Roinestad2); Appx02124 (Tr. 217:14-24) ("Roinestad2 taught *positive drive with slip allowed*; it did not teach positive drive without slip." (emphasis added)); *infra* Section VI.B.

### B. Neither Roinestad2 Nor Pupp Disclose "Without Slip"

Because the Board's obviousness determinations are based on an incorrect construction of "without slip," those determinations are erroneous and should be reversed. *See Corning v. Fast Felt Corp.*, 873 F.3d 896, 901-03 (Fed. Cir. 2017) (reversing Board's obviousness determinations when Board erred in claim construction and no substantial evidence existed to support the reference disclosing the limitations under a proper construction). No substantial evidence exists to support the Board's finding that either Roinestad2 or Pupp discloses "without slip" under its proper construction.

#### 1. There Is No Forfeiture for Roinestad2 Because Laitram Raised the "Occasional Slippage" Argument during the Proceedings

Ashworth wrongly contends that because the Board merely broadened the construction, Laitram should have raised its Roinestad2 arguments under either construction before the Board in its Patent Owner Responses. Ashworth Br. 47. The only grounds related to Roinestad2 in the Petitions for both the '388 and '645 patents were obviousness grounds, not anticipation. Appx00295; Appx01209. The relevant inquiry then is whether Ashworth proved that the combination of Roinestad2 and Roinestad would have rendered the challenged claims (and the "positive drive without slip" limitation) obvious, which is what Laitram contested. *See* Appx00869-00870; Appx00906-00910; Appx01560-01564. And in doing so, Laitram cited its

expert, who specifically identified Roinestad2's disclosure of slippage in contesting the proposed combination. *See* Appx00908 (citing Appx01124-01125, ¶¶ 162-164); Appx01124, ¶ 163 ("Roinestad2 acknowledges slipping"); *see also* Appx01562; Appx01775, ¶ 163.

Ashworth's reliance on the "general rule that any argument not raised before the Board is waived on appeal" is inapplicable here. Ashworth Br. 46. Laitram had no need to specifically object to Roinestad2's lack of "without slip" until Ashworth equated "positive drive" and "without slip" in its Reply, after which Laitram did object at the earliest opportunity, which was in its Surreply. *See* Appx01018-01020; Appx01668-01670. This case is simply unlike the cases that Ashworth cites, in which the issue was *never* presented in the proceeding below, because Laitram *did* timely raise its argument that Roinestad2 lacks "without slip" to the Board. *See, e.g.*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1295-96 (Fed. Cir. 2009) (determining argument had been "waived" on appeal because party failed to raise it before the trial court); *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1074-75 (Fed. Cir. 2017) (declining to consider IPR petitioner's new arguments on appeal when petition did not include arguments and petitioner never sought permission to present them to the Board); *L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1531-32 (Fed. Cir. 1995) (determining a party's argument was untimely when it was not presented to the trial court). And Ashworth had the opportunity to address

"occasional slippage" during the hearing. Appx01821-01822 (Tr. 16:3-17:8). Ashworth repeats that argument on appeal. Ashworth Br. 44-45. And because Laitram "had no opportunity to raise the objection" to the Board's new claim construction, on which the Roinestad2-Roinestad combination depends, before the Board's Final Written Decision, forfeiture should not apply. *See L.E.A. Dynatech*, 49 F.3d at 1531.

At minimum, the Court should vacate the Board's determination and remand for further proceedings. The Board made no fact findings on whether Roinestad2 discloses "no slip," so its obviousness conclusion is not supported by *any* (let alone substantial) evidence under the proper construction. And as petitioner, Ashworth always bears the burden of proving on the merits that the challenged claims are obvious, even if forfeiture applied. *See L'Oréal USA, Inc. v. Olaplex, Inc.*, 844 F. App'x 308, 323 (Fed. Cir. 2021) ("[G]iven that it was [petitioner] L'Oréal's burden to show unpatentability, the Board was at least permitted, *if not required*, to decide on the merits whether L'Oréal had met its burden. Nor do we see an abuse of discretion in the Board considering [patent owner] Olaplex's arguments in the authorized surreply . . . . L'Oréal has not identified authority that precludes such an adjudication-management decision." (emphasis added)). On remand, the Board can make the "adjudication-management decision" related to Ashworth's forfeiture

contention, *see id.*, but also determine in the first instance whether Ashworth satisfied its burden of proof.

### 2. Ashworth Concedes That Roinestad2 Discloses Positive Drive with "Occasional Slippage"

On the merits, Ashworth concedes that Roinestad2 discloses "occasional slippage" but argues "occasional slippage does not interfere with the positive character of the drive." Ashworth Br. 44 (quoting Appx00798, 8:46-50). Because Ashworth's argument again equates the claimed "positive drive" and "without slip" limitations, which is improper, it is not supported by substantial evidence and should be rejected. *See* Appx02124 (Tr. 217:14-24) ("Roinestad2 taught positive drive with slip allowed; it did not teach positive drive without slip."); Appx02166 (Tr. 259:13-19) (referring to Roinestad2 as "near positive drive" because it "allowed some slip").

Ashworth also implies that the "occasional slippage" in Roinestad2 "of individual rod ends 14 from engagement with one of the channel legs 48 or 49" is different from slip between the drive cage and the conveyor belt. *See* Ashworth Br. 44 (citing Appx00798, 8:46-50). Contrary to the arguments on "occasional slippage" that Laitram timely raised in its Surreply, Ashworth *never* made this argument to the Board, and for that reason, it should be rejected. *See In re Google Tech. Holdings*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("We have regularly stated and applied the important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances."). And because

this new argument on appeal rests purely on attorney argument, it also cannot constitute substantial evidence. *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence.").

On the merits, slip between the rod ends and channel legs is not different from slip between the drive cage and the conveyor belt. Roinestad2 explains that the vertical driving bars 45 on the drive cage are what "positively engage" with the cross-rod heads 14 of the conveyor belt. Appx00786, Abstract. And the channel legs 48 and 49 make up the driving bars 45. Appx00796, 4:48-50 ("The bars 45 are formed as radially outwardly directed channels having legs 48 and 49 and base 51."); *see also* Appx00791, Fig. 8. Therefore, Roinestad2 equates slip between the rod ends and the channel legs with slip between the conveyor belt and the drive cage.

Ashworth further argues that Roinestad2 teaches a POSITA how to avoid all slippage. Ashworth Br. 44-45. Even if true, it does not detract from Roinestad2's disclosure that the rod ends *do* experience slippage. In any event, Ashworth overstates the reference's disclosures. The parties' experts agreed that "without slip" refers to a system in which there is "no measurable difference in relative speed between the cage drum and the belt." Appx01067, ¶ 55 (Straight); Appx01717, ¶ 55 (Straight); Appx00975, ¶ 11 (O'Keefe); Appx01627, ¶ 11 (O'Keefe). Ashworth correctly points out that Roinestad2 teaches synchronizing the drive speeds of the drive cage and the conveyor belt. Ashworth Br. 44 (citing Appx00798, 8:28-36). But

Ashworth ignores Roinestad2's disclosure in the same paragraph that the speed is not synchronized when the conveyor system starts up:

> At start-up of the conveyor system, the speed of the cage relative to the supplemental drives is adjusted so that the drive rods 45 move the belt 11 at a speed *as closely synchronized as possible* with the speed of movement of the belt past the supplemental drives 25 and 26.

Appx00798, 8:37-42 (emphasis added); *see also* Appx01089, ¶ 106 (explaining the lack of smoothness in Roinestad2 because of the occasional slippage); Appx01739-01740, ¶ 106 (same); Appx02082-0287 (same). Because the speed cannot be synchronized, there are "[m]iniscule variances in the speed of the cage 21 relative to the supplemental drives," which in turn leads to the "occasional slippage." Appx00798, 8:42-50; *see also* Appx02092 (Tr. 185:8-9) ("[W]e wanted that miniscule slip to go away."). Roinestad2 therefore discloses measurable differences in speed under both experts' agreed interpretation, and therefore, fails to disclose a positive-drive system that occurs "without slip." *See also* Appx02166 (Tr. 259:18-19) (Mr. Straight explaining that Roinestad2 is "near positive drive" because it "allowed some slip").

The Board's obviousness conclusion for claims 1 and 3 of the '645 patent are predicated on its erroneous claim construction, and no substantial evidence supports the conclusion that the combination of Roinestad2 and Roinestad would render the claims obvious under the correct construction. The Court therefore should reverse

the Board's determination of obviousness, or at least vacate and remand for the Board to make further findings.[1]

### 3. There Is No Forfeiture for Pupp Because Laitram Always Contested the "Positive Drive Without Slip" Limitation

Laitram has not forfeited any argument that Pupp fails to disclose "without slip." As Ashworth admits, Laitram argued to the Board that Pupp's discussion of positive drive was confined to the prior art, and therefore, Pupp's own system that Ashworth relied on for the proposed combination failed to disclose *any* positive drive, one with or without slip. Ashworth Br. 42. Having established that Ashworth did not prove that Pupp met the threshold issue (positive drive), Laitram was not required to explicitly argue that Pupp failed to teach a more specific characteristic of that system (positive drive that occurs without slip). *Cf. Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1264-65 (Fed. Cir. 2021).

Laitram's argument on appeal—that the Board's finding for Pupp is predicated on its new and erroneous "without slip" construction—is both responsive to the Board's construction of "positive drive without slip" and fully consistent with Laitram's arguments below on Pupp. *See Power Probe Grp., Inc. v. Innova Elecs. Corp.*, No. 2021-2354, 2022 WL 1089910, at *2-3 (Fed. Cir. Apr. 12, 2022)

[1] For the same reasons, the Court should reject Ashworth's argument—stylized as a cross-appeal (*infra* Section VII)—that the Board erred in finding that the Roinestad2-Roinestad combination does not render claim 9 of the '388 patent obvious.

(nonprecedential) (rejecting argument that a party forfeited a claim-construction argument on appeal when it advanced a consistent argument below); *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001) (noting that the waiver doctrine's "basic requirement" is for "the parties to develop their positions at trial" and "'[t]he argument at the trial and appellate level should be consistent'" (quoting *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1363 (Fed. Cir. 1999))). Because Laitram has not changed the scope of its construction of "without slip," it has not forfeited any argument that Pupp fails to disclose "without slip."

#### 4. The Board Provided No Rationale for Why Pupp Discloses "Without Slip"

On the merits, Ashworth contends that substantial evidence supports the Board's finding that Pupp discloses "without slip." It argues that "a POSITA would understand that the ridge in Pupp's annotated FIG. 8 would engage the inside edge of the conveyor belt to eliminate friction in the circumferential direction using positive engagement as expressly disclosed in Pupp." Ashworth Br. 50 (citing Appx00047). But Ashworth overstates the Board's finding here. Although the Board relied on Pupp's Figure 8 as supposedly disclosing "positive drive," the Board never linked Figure 8 to the separate "without slip" limitation. *See* Appx00047 ("Patent Owner is correct that Pupp does not expressly disclose the structure (or gaps) on the inner edge of the conveyor belt. We determine, however, that the portions of columns 1, 3, and 4 of Pupp discussed above demonstrate that one of ordinary skill

in the art would have understood that the embodiment in Figure 8 of Pupp includes *positive drive*." (emphasis added)). In other words, the Board did not provide any rationale for why the ridges in Pupp's Figure 8 would disclose "without slip." *See In re Nuvasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016) (requiring the Board to provide "a reasoned basis" for its decision).

Therefore, as with Roinestad2, the Board's conclusions of obviousness for claim 9 of the '388 patent and claims 1 and 3 of the '645 patent are based on an erroneous claim construction and lack substantial evidence under the correct construction. Thus, the Court should reverse, or at minimum, vacate and remand for the Board to make further findings consistent with the correct construction.

### C. Ashworth Refuses to Acknowledge the Board's Inherency Finding for Pupp

Laitram does not argue, as Ashworth suggests, that the Board erred because it determined Pupp discloses positive drive, even though Pupp does not expressly do so. *See* Ashworth Br. 19-20 (citing *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330 (Fed. Cir. 2020)). Instead, Laitram argues that the Board applied the wrong legal standard when it determined Pupp inherently discloses positive drive, and the Board's determination that Pupp inherently discloses positive drive lacks substantial evidence.

Ashworth rigidly assumes that, because the Board did not use the word "inherency," it did not make any inherency findings. Ashworth Br. 52. But a

disclosure in the prior art must be either express or inherent. *See Novartis Pharmas. Corp. v. Accord Healthcare, Inc.*, No. 2021-1070, 2022 WL 2204163, at *2 n.2 (precedential) (Fed. Cir. June 21, 2022) ("Novartis contends the written description requirement may be *satisfied by "implicit disclosure" as distinct from express or inherent disclosure*. Yet it fails to identify any case holding that *"implicit disclosure" (whatever that means)* is sufficient." (emphases added) (citation omitted)).

As Ashworth appears to admit, it never argued below that Pupp "implicitly" discloses or "suggests" positive drive. *See* Ashworth Br. 51-52 (referring to Pupp's "express" disclosures); *see also* Appx00044; Appx00321-00322. Ashworth's Petition asserted only that Pupp "discloses" positive drive. Appx00321-00322. The Board however rejected that argument, finding no express disclosure of positive drive in Pupp. Appx00047-00048 ("Patent Owner is correct that Pupp does not expressly state that its belt is 'positively driven without slip' . . . ."). Having found that Pupp does not "expressly" teach positive drive, the Board necessarily relied on inherency in concluding that Pupp discloses positive drive. *See* Appx00044 ("[W]e agree with Petitioner that one of ordinary skill in the art would view Pupp's Figure 8 as *implicitly* describing 'positive engagement' or, as phrased in element 9F, 'positive[] drive[]." (emphasis added) (alterations in original) (citations omitted)); *see also* Appx00081-00082; Appx00162; Appx00201-00202.

Because Ashworth's Petition relied on only what Pupp expressly "discloses," it was improper for the Board to consider what Pupp *implicitly* or *inherently* discloses, or, as Ashworth suggests on appeal (Ashworth Br. 51-52), whether the limitation was *suggested* by Pupp. *See In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016) ("[T]he Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond"); *cf. M & K Holdings, Inc. v. Samsung Elecs. Co.*, 985 F.3d 1376, 1385 (Fed. Cir. 2021) (holding that the Board's anticipation finding "deviated impermissibly" from the petition's theory of obviousness based on reference).

In refusing to address the merits of Laitram's inherency arguments,[2] Ashworth incorrectly reframes the Final Written Decision as finding that "Pupp *expressly* disclosed positive drive without slip to a [POSITA]," Ashworth Br. 30, 51 (emphasis added), despite the Board's express finding otherwise, Appx00047-00048. Even so, Ashworth points only to citations in the intrinsic record that show Pupp *could be* a positive-drive system rather than showing Pupp *expressly* or *necessarily* is one.

For example, Ashworth and the Board's reliance on Pupp's disclosure that "prior art solutions" used positive drive does not amount to substantial evidence that

[2] Besides refusing to acknowledge that the Board relied on inherent disclosure, Ashworth also fails to address Laitram's argument that the Board improperly shifted the burden to Laitram to disprove inherency. *See* Laitram Br. 42-45; Ashworth Br. 51-53.

the other portions of Pupp that Ashworth maps to the claim language is also positive drive. The problem with this disclosure is not, as Ashworth contends, that a "single disclosure" cannot invalidate a patent. Ashworth Br. 48 n.4. The problem is that this single disclosure does not because Ashworth did not specifically map Pupp's discussion of the prior art's use of positive drive for solving circumferential friction to the claim language. *See* Laitram Br. 38-39; Appx00321; Appx01236-01237. Instead, Ashworth mapped Pupp's disclosures in Figure 5 (the drum) and Figure 8 (the supposed "ridges"), as well as Pupp's discussion of that proposed solution, to the claim language. *See* Appx00321 (citing Pupp (Appx0542) at 3:3-8, 4:14-36, Figs. 5, 8). Ashworth's Petition merely mentioned Pupp's discussion of the prior art in passing and without explanation for how or whether to apply the prior art's disclosure to the Pupp solution that Ashworth maps to the claims. *See* Appx00321. And in any event, the "single disclosure" does not state that circumferential friction is *always* addressed using positive drive, further undermining the Board's conclusion.

Ashworth also turns to Pupp's disclosure of an embodiment where the conveyor belt moves in the circumferential direction around the drum without friction *if* the conveyor belt in Figure 1 makes contact with the outside of the drum *and if* the contact between the drum and belt involves a driving engagement. Ashworth Br. 48-49; Appx00548, 3:3-8. Based on this scant reference, Ashworth

makes the same mistake as the Board. Ashworth jumps to the conclusion that Pupp necessarily discloses positive drive based on its discussion of the prior art using positive drive to cope with circumferential friction, even though Pupp aims to solve a separate problem—axial friction. Appx00547, 1:45-52. Just because the prior art solved the problem of circumferential friction using positive drive does not mean Pupp did the same when the focus of Pupp was on a different problem—axial friction. *See* Appx01092-01094, ¶ 117 (explaining that a POSITA would not know if Pupp necessarily discloses positive drive because Figure 1 does not show whether the belt contacts the outside of the drum); Appx02039-02041 (Tr. 132:18-134:13) ("The real thrust of [Pupp] is the axial friction, and it's not clear, to me, what all [it is] saying about the circumferential friction."). This disclosure does not amount to substantial evidence to support the Board's conclusion that Pupp "implicitly" or necessarily discloses positive drive.

Ashworth also points to Pupp's Figure 8's unidentified "ridges" and its own expert's testimony on Figure 8 as substantial evidence to support the Board's finding that Pupp discloses positive drive. Ashworth Br. 49-53 (citing Appx00630-00631, ¶ 83; Appx01337-01338, ¶ 83; Appx00976-00980, ¶¶ 13-16; Appx01628-01632, ¶¶ 13-16). But Ashworth ignores that even the Board recognized that "Pupp *does not expressly disclose* the structure (or gaps) on the inner edge of the conveyor belt" that

would be necessary to engage with any supposed "ridge" in Figure 8 to supposedly enable positive drive. Appx00047 (emphasis added).

And Mr. O'Keefe's expert declaration provided no support for that missing structure. Rather, in his first declaration, he reproduced only those same disclosures from Pupp that the Board found fail to expressly disclose any such ridge or structure. Appx00630-00631, ¶ 83; Appx01337-01338, ¶ 83. And in his second declaration, he tried to rebut only Mr. Straight's arguments for why Pupp discloses friction drive, rather than affirmatively explain why Pupp supposedly and necessarily discloses positive drive. *See* Appx00976-00980, ¶¶ 13-16; Appx01628-01632, ¶¶ 13-16. Moreover, none of Mr. O'Keefe's disclosures support the Board's conclusion that Pupp inherently teaches positive drive. The Board erred in crediting and relying on Mr. O'Keefe's conclusory statement that "[t]he belt is driven by ridges on the drive members [] wherein the ridges engage the inside edge of the belt 2." Appx00047; Appx00630-00631 ¶ 83. Conclusory statements cannot provide substantial evidence to support the Board's findings. *See In re Nuvasive*, 842 F.3d at 1382-85.

Because the Board failed to apply the correct legal standard and lacked substantial evidence to find Pupp inherently discloses positive drive, this Court should reverse the Board's determination for the challenged claims.

### D. The Board's Inconsistent Findings Preclude Any Motivation to Combine Roinestad with Roinestad2 or Pupp

#### 1. Ashworth Does Not Contest That the Board's Findings on Motivation to Combine Are Contradictory

Ashworth fails to address the Board's contradictory conclusions on motivation to combine. *See* Ashworth Br. 58-62. The Board determined that conical drums reduce belt tension in *friction-drive* systems, but that Ashworth had failed to prove that conical drums reduce that tension in *positive-drive* systems. Appx00055 ("We are persuaded by Patent Owner's position and find that the evidence provided only demonstrates that using a conical drum reduces belt tension *in a friction drive system*. Specifically, Roinestad, cited by Petitioner (and Mr. O'Keefe), indisputably discloses only *friction drives*, not positive drives." (citation omitted)); Appx00169-00170 (citation omitted). Even though Ashworth had not proven the beneficial reason for making the proposed combination, the Board found a motivation to modify a positive drive system with a conical drum.

As Laitram explained in its Principal Brief, the Board's contradictory conclusions on motivation to combine cannot be supported by substantial evidence. Laitram Br. 47-49; *Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*, 865 F.3d 1348, 1354 (Fed. Cir. 2017) (rejecting the Board's analysis when it includes internal inconsistencies). Ashworth offers no basis for affirming the

Board's determinations on motivation to combine in view of these contradictory findings. *See* Ashworth Br. 57-62.

**2. There Is No Affirmative Motivation to Modify Roinestad2 or Pupp with Roinestad Given the Board's Inconsistent Findings**

The only reason supplied by either Ashworth or the Board for modifying a positive-drive system with Roinestad's conical drum is to reduce belt tension. Ashworth Br. 60 ("Why look to Roinestad for what is already solved? The answer is to provide a solution that provides even greater reduction of tension affecting the belt."); Appx00056-00062; Appx00110-00117; Appx00171; Appx00220-00227. But the Board already concluded that Ashworth had proven only that conical drums reduce tension in friction drive, not positive drive—a finding that Ashworth does not contest. *See* Appx00053-00055; Appx00166-00170; Ashworth Br. 57-62. Based on that uncontested finding—that Ashworth had not proven that conical drums reduce tension in positive-drive systems—there was no rational and evidence-supported basis for a POSITA to modify either Pupp (to the extent it discloses positive drive) or Roinestad2 with a drum shape that would reduce friction only in friction-drive systems.

Ashworth mischaracterizes the Board's finding when it argues that *all* conical or tapered drums reduce tension in *all* systems and again takes Mr. Straight's testimony out of context. Ashworth Br. 59. Mr. Straight never made such an

admission in the context of positive-drive systems; rather, he agreed only that Roinestad (a friction-drive system) teaches a POSITA "that if you have a tapered surface . . . at the entrance of the spiral conveyor, then it will reduce the tensions in the belt as it enters that spiral conveyor." Appx02137-02138 (Tr. 230:23-231:5). This testimony is not a blanket admission, as Ashworth would have it, that *all* tapered-surface systems reduce tension and stress.

Left without an affirmative reason for the proposed modification, Ashworth merely posits that modifying Roinestad2 or Pupp with a different drive tower shape would be an obvious design choice based on a limited number of drive tower shapes. Ashworth Br. 60. But Ashworth relies on conclusory expert testimony to support its assertion that a POSITA would consider the shape of the tower a simple design choice. *See* Appx00617-00618, ¶ 66; Appx00700-00701, ¶ 155; Appx01396, ¶ 149; *see also* Appx00056. Simply stating, as the Board did here (Appx00056; Appx00193-00194; Appx00229-00230), that a modification is a "design choice" is not substantial evidence. Rather, the Board must offer a *reason* why a POSITA would have made the specific design choice. *See, e.g.*, *Black & Decker, Inc. v. Positec USA, Inc.*, 646 F. App'x 1019, 1027 (Fed. Cir. 2016) (nonprecedential) ("Our precedent requires that the Board explain a rationale why a person of ordinary skill would have modified [the prior-art reference]."); *In re Rouffet*, 149 F.3d 1350, 1359 (Fed. Cir. 1998) ("[T]he Board must explain the reasons one of ordinary skill

in the art would have been motivated to select the references and to combine them to render the claimed invention obvious."); *Cutsforth, Inc. v. MotivePower, Inc.*, 636 F. App'x 575, 577-78 (Fed. Cir. 2016) (nonprecedential) ("In a case of obviousness, the Board must explain why a person of ordinary skill in the art would modify the prior art references to create the claimed invention."); *cf. Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1362 (Fed. Cir. 2016) ("[R]eferences to 'common sense'—whether to supply a motivation to combine or a missing limitation—cannot be used as a wholesale substitute for reasoned analysis and evidentiary support . . . ."); *In re Van Os*, 844 F.3d 1359, 1361 (Fed. Cir. 2017) ("Absent some articulated rationale, a finding that a combination of prior art would have been 'common sense' or 'intuitive' is no different than merely stating the combination 'would have been obvious.' Such a conclusory assertion with no explanation is inadequate to support a finding that there would have been a motivation to combine.").

The Board's "reason," however, is not supported by substantial evidence because it contradicts the Board's other findings. The Board accepted Ashworth's proposed motivation that a POSITA would have added Roinestad's conical drive tower to Roinestad2's positive-drive system to reduce belt tension. Appx00111 ("Mr. O'Keefe states (in a paragraph cited by Petition) that [a POSITA] would have combined the shape of Roinestad's drive tower with Roinestad2's positive drive . . . 'to lower belt tension and reduce the amount of stress exerted on the belt.'");

Appx0221. But the Board failed to "offer a reason for why a [POSITA] would have made the specific design choice" when Roinestad2 already reduced belt tension by replacing friction drive with positive drive *and* when Ashworth had proven only that the conical drive towers reduce tension in friction drive. *See, e.g.*, *Black & Decker*, 646 F. App'x at 1027; *Cutsforth*, 636 F. App'x at 578; Appx00795, 1:10-38. To the extent that the Board supplied an explanation, it is "nominal" in view of the prior art's disclosures and the Board's inconsistent and contradictory findings. *See Cutsforth*, 636 F. App'x at 578 (characterizing the Board's explanation as "nominal" when it simply repeated petitioner's argument without any further explanation); *see also Arendi*, 832 F.3d at 1362 (warning that a conclusory reference to "common sense" as providing a motivation to combine "cannot be used as a wholesale substitute for reasoned analysis and evidentiary support").

There are also not a "limited number of drive tower shapes," as Ashworth contends. Ashworth Br. 60. Mr. Straight explained that changing the shape is not a simple design choice because deviations in the shape could lead to belt failure. *See* Appx01118-01119, ¶ 150; Appx01122-01123, ¶ 160. And Roinestad discloses a variety of drive tower shapes, including conical, cylindrical, and mixed conical-cylindrical shapes. Appx00555, Fig. 1; Appx00558, Fig. 5; Appx00563, Fig. 11. For example, Figure 11 of Roinestad depicts a cylindrical drive tower with a top portion that flares out and a different drive tower with a bottom skirt portion. Appx00563,

Fig. 11. Ashworth's own Petition admitted that the conical or tapering of the drive tower could occur "*anywhere* along the height of the drive tower." Appx00354 (emphasis added). Because the mixed shapes incorporate various partially conical alternatives, the options for mixed conical-cylindrical drive tower shapes are innumerable. *See id.*

The only justification Ashworth suggests for the Roinestad2-Roinestad or Pupp-Roinestad combination, based on the motivation of reducing belt tension, is by deviating from the proposed combination in the Petition. Ashworth starts with Roinestad's conical drive tower (employing friction drive) and proposes modifying it with the (supposed positive drive) disclosures in Roinestad2 or Pupp because positive drive (according to the Board) is useful in reducing belt tension. *See* Ashworth Br. 60-62. The Petition however did not take the position that Ashworth seemingly advances on appeal, and as such, there is no evidence or particularized reasoning in the record for that proposed combination. *See* Appx00313-00314; Appx01228-01229. Instead, Ashworth's proposed combinations in the Petition required modifying Roinestad2 and Pupp with Roinestad's conical drive tower. Appx00313-00314; Appx01228-01229. Ashworth is foreclosed from offering new grounds or motivations to combine that it did not present in its Petition. *See M & K Holdings*, 985 F.3d at 1385 (noting that the Board may not deviate from the invalidity theories set forth in the petition); *Magnum Oil Tools*, 829 F.3d at 1381

("[T]he Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond."); *Oren Techs.*, 2021 WL 3120819, at *4 (finding the Board "erred by repurposing the theory of motivation to modify" a reference when petitioner failed to raise that theory of obviousness in its petition).

### E. Ashworth's Construction of a "Ridge" That Is "Tapered Along a Portion of Its Length" Contradicts the Claims and Intrinsic Record

Contrary to Ashworth's assertion, Laitram does not argue for a construction of a "tapered" ridge that is supported only by Figures 2A and 2B, but one that is consistent with the full claim limitation, the surrounding claim language, and the intrinsic record. Ashworth's isolation of the word "tapered" in claim 9, instead of the full limitation ("ridge . . . tapered along a portion of its length") in the context of the rest of the claim language, must be rejected. The word "tapered" cannot be considered in a vacuum, divorced from the surrounding claim language. *See World Class Tech. Corp. v. Ormco Corp.*, 769 F.3d 1120, 1123 (Fed. Cir. 2014) ("We generally give words of a claim their ordinary meaning in the context of the claim and the whole patent document . . . ."). But Ashworth does just that, construing any use of the word "tapered" in any claim, despite the contextual use of that term, to mean "not constant." Ashworth Br. 54-55.

As Laitram explained, this construction renders other terms in the claims to be surplusage, to which Ashworth has no response. Laitram's Br. 27-28. In

particular, it would render the term "distance . . . varies" that is already recited in claim 9 superfluous. Appx00265, 8:15-17 (reciting that the ridge's "distance from the vertical axis *varies* from the bottom to the top of the drive tower") (emphasis added). The claim already recites that the distance from the vertical axis to the ridge "varies" (*i.e.*, is "not constant"). Thus, the "tapered along a portion of its length" term must have additional meaning. *Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("Different claim terms are presumed to have different meanings."). Ashworth fails to justify departing from this presumption.

Claim 10's use of the term "tapered" does not conflict with Laitram's construction. *See* Ashworth Br. 54-55. Claim 10 adds a limitation that focuses on the "distance . . . from the vertical axis" limitation: "wherein *the distance* of the ridge from the vertical axis in the lower segment is constant below the portion that is tapered." Appx00265, 8:25-27 (emphasis added). The "distance" term has its antecedent basis from claim 9's "distance" limitation ("distance from the vertical axis varies from the bottom to the top of the drive tower"). Claim 10 therefore makes clear that below the tapered portion of the ridge's length is another portion whose distance from the vertical axis does not vary in that portion. This is fully supported by the specification's discussion of embodiments having different distances from the

vertical axis from bottom to top of the drive tower. *See, e.g.*, Appx00261, Figs. 17-18; Appx00263, 3:30-33, Appx00264-00265, 6:53-7:2.

The requirements of claim 10 could be met in several different ways. For example, Figure 18 depicts a drive tower with a skirt portion 194, where part of the skirt of the tower itself is tapered 197, thereby meeting the "distance…varies" limitation of claim 9. When the tapered ridge depicted in Figures 2A-2B is affixed to this drive tower, it also embodies the "tapered" ridge limitation of claim 9. But Figure 18 also depicts another portion 196 of the tower below the skirt portion that does not vary, Appx00264, 6:57-62; and so the non-tapered portion of the ridge affixed to this portion 196 has a distance to the vertical axis that "is constant below the portion"—of either the tower or the ridge—"that is tapered." *See* Appx00265, 8:25-27, claim 10. Claim 10 could also be met by having a drive tower that tapers inward the same amount as a ridge affixed to the tower tapers outward, such that there is a constant distance from the vertical axis to the ridge. Consequently, claim 10 is simply directed to an embodiment that is narrower than independent claim 9 (which recites that the distance from the vertical axis *varies* from bottom to top) by requiring the claimed embodiment to *also* have a portion in a lower segment where the distance from the vertical axis *does not vary*.

Laitram's construction is also consistent with the specification's discussion of Figures 4A or 4B as well. Laitram Br. 55. The '388 patent specification explains that

the height of the ridge "tapers" in the upper segment of each drive member, as depicted in Figures 4A and 4B. Appx00263, 4:2-6. The specification however does not equate the "tapering" in the upper segment with a choice between a change in height of the ridge or a change in the distance from the vertical axis, as Ashworth contends. Ashworth Br. 55 (citing Appx00263, 4:7-10). Rather, it first explains that the ridge's height is tapered in the upper segment. Appx00263, 4:7-10 ("[T]he tapering occurs in an upper segment 54 of each drive member 14."). It then explains that because of the ridge's tapering in the upper segment, as the ridge's height decreases, so too does its distance to the vertical axis, *both* of which "allow[] the belt to disengage gradually and neatly from the drive members of the rotating tower." Appx00263, 4:7-10 ("The decreasing height of the ridge 28, or its distance from the drive tower's vertical axis, in the upper segment allows the belt to disengage gradually and neatly from the drive members of the rotating tower"); *see also* Laitram Br. 56. The concept of the decreasing (varying) distance from the vertical axis is embodied by, for example, other portions of claim 9, which the Board overlooked. *See id.*; *see also* Appx00265, 8:16-17 (claim 9 requiring that the ridge's "distance from the vertical axis varies from the bottom to the top of the drive tower").

Ashworth makes the same mistake as the Board when it relies on descriptions in the specification of a "tapered" *drive tower shape* to inform what it means for a separate element (the *ridge*) to be "tapered" in another manner ("tapered along a

portion of its length”). For instance, claims 1 and 2 refer to a “skirt portion” of the drive tower that is “tapered outwardly away from the vertical axis” and includes a “tapered portion connecting the bottom portion to the upper portion.” Appx00265, 7:11-29. Similarly, Ashworth relies on Figures 17 and 18 to support the Board’s construction, even though the specification describes these figures, like claims 1 and 2, as having a skirt portion of the drive tower that “tapers.” Appx00264, 6:53-62. These separate uses of “taper” do not contradict the specification’s definition of the tapered region of the ridge’s height along its length.

The specification’s disparate uses of “taper”—whether for the drive tower or the ridge—are fully consistent with each other when viewed in the context of the surrounding claim language. The specification supports embodiments with different “tapered” and non-tapered portions of the drive tower whose distance from the vertical axis varies (*see* Appx00264, 6:57-63, Fig. 18, “tapered portion 197”) or whose distance from the vertical axis does not vary (*see* Appx00264, 6:57-63, Fig. 18, “bottom portion 196”). The specification also supports embodiments where a tapered ridge is affixed to the drive members of the drive tower, and whose height along its length varies (Appx00254, Figs. 2A-2B; Appx00263, 3:24-55; Appx00265, 8:18-21).

As a matter of last resort, Ashworth asserts that Laitram’s counsel admitted during the hearing that Figure 17 is covered by claim 9 and that Laitram’s

construction reads the Figure 17 embodiment out of claim 9. Ashworth Br. 57 (citing Appx01865); Appx01865 (60:17-18). Not so. Ashworth (again) takes the statement to the Board out of context. In fact, Laitram's alleged "admission" to the Board occurred in the context of the shape of the *drive towers*, not the *ridge*. Laitram's counsel first discussed the shapes of the drive tower depicted in Figures 17 and 18 (reproduced below). Appx01863 (58:7-17) (referencing Figure 18 and explaining: "[T]here's a straight section, a tapered section, and another straight section. This is what is in claims ten, 11, 12, and 13. None of the prior art has this second straight section.").



FIG. 17



FIG. 18

Appx00261.

Laitram's counsel also explained that the prior art did not disclose these three portions of the drive tower shape in Figure 18. Appx01864 (59:24-60:20). In fact,

Ashworth excludes relevant portions of the very sentence that it quotes, Ashworth Br. 57, which make clear that Laitram's counsel was discussing the "top two components"—the straight section and the tapered section—of the drive tower shape in Figure 18:

> [Laitram]: Yes, that it is a constant diameter below the tapered portion. That's an additional -- you know, claim nine has, if you will, *claim nine is more like Figure 17 where you've got the top two components*. It's claim ten that gives you, and 11, 12, 13, that takes you to Figure 18 is what I'm saying.

Appx01865 (60:16-10) (emphasis added). When viewed in context, Laitram's supposed "admission" is merely a comparison of claim 9's drive tower shape to Figure 17's two-component drive-tower shape, instead of Figure 18's three-component shape, and has nothing to do with the construction of "tapered" as it applies to a ridge. Laitram's construction of the "tapered" ridge aligns with Figure 17 and does not read out this embodiment from claim 9, as the "tapered" ridge of Figures 2A-2B affixed to the drive tower of Figure 17 would embody the "distance . . . varies" and "tapered" ridge elements of claim 9.

Because neither Pupp nor Roinestad disclose a ridge that is "tapered along a portion of its length," this Court should reverse the Board's determination that Pupp and Roinestad render claim 9 of the '388 patent obvious.

## VII. RESPONSE BRIEF TO ASHWORTH'S CROSS-APPEAL

In its cross-appeal, Ashworth asks this Court to reweigh the evidence already considered by the Board. In doing so, it accuses the Board of considering only a single embodiment from Roinestad instead of its full teachings, but the Board did no such thing. It determined instead that Ashworth failed to meet its burden when it offered no explanation for its proposed combinations.

The Board correctly determined that Ashworth failed to prove that claim 10 was obvious over Pupp and Roinestad and also failed to prove that claims 9-10 were obvious over Roinestad2 and Roinestad. Therefore, the Court should reject Ashworth's claim 9 arguments and affirm the Board's determination that claim 10 is not obvious.

### A. Ashworth's "Cross Appeal" of Claim 9 Is Procedurally Improper

As a threshold matter, Ashworth's cross-appeal of claim 9 is improper. A cross-appeal is proper only "when a party seeks to enlarge its own rights under the judgment or to lessen the rights of its adversary under the judgment." *Bailey v. Dart Container Corp.*, 292 F.3d 1360, 1362 (Fed. Cir. 2002); *see also* Fed. Cir. Rules of Practice, Practice Notes to Rule 28.1. The Board concluded that claim 9 is obvious over Pupp and Roinestad, which Laitram challenges on appeal; yet Ashworth cross-appeals the Board's determination that claim 9 is not obvious over Roinestad2 and Roinestad. Because the Board's Final Written Decision already concluded that claim

9 is obvious, the issues that Ashworth raises in its "cross appeal" on claim 9 "if successful, [] would not expand the scope of the judgment in [Ashworth's] favor." *Aventis*, 637 F.3d at 1344. Even conditional cross appeals on issues of invalidity are improper. *Id*. Therefore, the prosper disposition as to Ashworth's cross-appeal on claim 9 would be dismissal. *See id.*; *TypeRight*, 374 F.3d at 1157 & n.5. Yet Laitram addresses claim 9 here if Ashworth's arguments for Roinestad2 and Roinestad are treated as providing alternative grounds for affirming the Board's determination. *See TypeRight*, 374 F.3d at 1157.

### B. Substantial Evidence Supports the Board's Determination That Ashworth Failed to Prove Claims 9 and 10 Obvious

The Board's determinations that Ashworth failed to carry its burden of showing claim 10 is rendered obvious by Pupp-Roinestad and claims 9-10 by Roinestad2-Roinestad are supported by substantial evidence. Ashworth argues that the Board erred by limiting its consideration of Roinestad to a single embodiment, rather than all the teachings of that reference. Ashworth Br. 65-70. But Ashworth never carried its burden as petitioner to prove that the combinations render the claims obvious. Ashworth also fails to address the Board's reasoning for reaching these conclusions—that Ashworth's obviousness argument relied on combining multiple, mutually exclusive embodiments in Roinestad for a single claim.

### 1. Ashworth Fails to Dispute the Board's Findings That the Petition Failed to Adequately Explain the Obviousness Theories

The Board rightly concluded that Ashworth failed to meet its burden in proving that the proposed combinations would have rendered the claims obvious. As petitioner, Ashworth must identify "with particularity" the evidence supporting the grounds in its Petition. *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016) (quoting 35 U.S.C. § 312(a)). Ashworth failed to do so for both the Pupp-Roinestad and Roinestad2-Roinestad combinations.

The Board determined that, for Pupp and Roinestad, Ashworth's Petition relied on only Roinestad's Figure 1 for the shape of the drive tower (conical) to meet claim 9—a finding that Ashworth does not dispute. Appx00027 (citing Appx00313), Appx0030 (citing Appx00315); Ashworth Br. 65-68. Ashworth's expert also identified only Figure 1 for claim 9. Appx00027 (citing Appx00627-00628 ¶ 80). Although Ashworth's *Reply* cited Roinestad's Figures 1 *and* 11 for an element of claim 9, the Board found that Ashworth's *Petition* relied on only Figure 1 in mapping the prior art to the limitation. Appx00030; Appx00080. But then for claim 10, the Board found that Ashworth's Petition cited to Figure 11 (mixed cylindrical-and-conical)—not Figure 1:

> Petitioner's discussion of claim 10 in the context of this asserted ground, however, does not even mention Figure 1 of Roinestad. *See* [Appx00322-00323]. In contrast, the discussion of claim 10 focuses

> Figure 11 of Roinestad, but Figure 11 was never discussed at all as to claim 9 in the context of this asserted ground. *See* [Appx00310-00323].

Appx00080-00081. Ashworth again does not dispute this finding. Ashworth Br. 65-68. But Ashworth does not explain why the Board erred when it held that Ashworth's Petition had not adequately explained or supported how the proposed combination would rely on Figure 11's shape for claim 10, when it relied on only Figure 1's shape for claim 9. *See Intelligent Bio-Sys.*, 821 F.3d at 1369.

Ashworth's Petition is similarly deficient for the Roinestad2 and Roinestad combination. The Board correctly found that Ashworth's Petition relied on only Roinestad's Figure 1 for the shape of the drive tower to meet claim 9's limitation that the ridge's "distance from the vertical axis varies from the bottom to the top of the drive tower." Appx00101 (citing Appx00350). The Board also found that the Petition relied on a *different* shape (Figure 11) for a different limitation of the same claim—"wherein the ridge in the lower segment is tapered along a portion of its length." Appx00101-00102 (citing Appx00354). Ashworth does not contest either of the Board's findings. Ashworth Br. 68-70. Rather, it accuses the Board of improperly limiting the teachings of Roinestad to a single embodiment (Figure 1); but it was Ashworth who tried to give the modified drive tower two different shapes for the same claim in the Roinestad2-Roinestad combination. *See* Appx00351-00355. Ashworth fails to explain how the Board erred when it held Ashworth to the

specifics of its Petition and found that it did not adequately explain its proposed combination in the Petition. Appx00103; *see Intelligent Bio-Sys.*, 821 F.3d at 1369.

### 2. Ashworth Ignores the Board's Analysis That the Same Set of Claims Cannot Be Multiple Shapes at Once

Rather than addressing the Board's analysis of the deficiencies in the Petition, Ashworth cites cases that caution against limiting a reference to a single embodiment rather than considering all its teachings. Ashworth Br. 68-69 (citing *Merck & Co. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989); *EWP Corp. v. Reliance Universal Inc.*, 755 F.2d 898, 907 (Fed. Cir. 1985)). The Board however did not run afoul of these cases, as Ashworth contends. Ashworth Br. 63, 68-69. It simply determined that Ashworth failed to adequately explain with particularity how the two shapes would be combined in the proposed combinations. *See* Appx00079-00081; Appx00098-00103.

As the Board explained, Ashworth did not explain how its combination of two mutually exclusive shapes (Roinestad's Figure 1 and Figure 11) for the same set of claims would render the challenged claims obvious: "Petitioner has not explained, with sufficient particularity, the proposed modified device in the context of claim 10 to demonstrate how such a modified device satisfies both the requirements of claim 9 *and also* those of claim 10 (which depends from claim 9)." Appx00080-00081; *see also* Appx00101-00103; *Magnum Oil Tools*, 829 F.3d at 1380 ("To satisfy its burden of proving obviousness, a petitioner cannot employ mere conclusory statements. The

petitioner must instead articulate specific reasoning, based on evidence of record, to support the legal conclusion of obviousness.”).

Despite a clear explanation from the Board laying out Ashworth’s failure to provide “specific reasoning,” *Magnum Oil Tools*, 829 F.3d at 1380, Ashworth ignores the Board’s analysis altogether and recharacterizes the decision as limiting the teachings of Roinestad to the Figure 1 embodiment. Ashworth Br. 62-70. But nothing in the record evidence explains how the proposed modified device could simultaneously have a conical drive shape (Roinestad Figure 1) *and* a mixed conical-and-cylindrical shape (Roinestad Figure 11). *See* Appx00079-00081; Appx00101-00103; Appx00311-00316; Appx00350-00356; *see also* Appx01830-01833 (Tr. 25:6-28:24); Appx01837 (Tr. 32:5-13).

Ashworth provides no explanation or authority that requires the Board consider a proposed combination that would incorporate contradictory features from multiple, mutually exclusive embodiments. While the Board may not limit a reference’s teaching to a described invention or a preferred embodiment, *In re Applied Materials, Inc.*, 692 F.3d 1289, 1298-99 (Fed. Cir. 2012), as fact finder, the Board may determine the scope and content of the prior art, including how embodiments relate to one another, *see Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). Ashworth does not address or rebut the Board’s factual determination that Ashworth relied on contradictory features from multiple embodiments or that it

failed to supply adequate rationale for making the proposed combination. *See* Appx00079-00081; Appx00101-00103.

And unlike what underlies the basis of Laitram's appeal, Ashworth was not prejudiced by the Board's conclusion in its Final Written Decision. In fact, in the Institution Decision, the Board put Ashworth on notice of the inconsistency in the Petition. There, the Board explained that it interpreted the Petition as relying on the conical shape in Figure 1 for claim 9 and then mixed cylindrical-and-conical shape in Figure 11 (left) for claim 10 in the Pupp-Roinestad combination. Appx00834-00835 ("At this stage of the proceeding, it is unclear how to reconcile these issues."). The Board also explained its similar interpretation of Ashworth's mixed use of shapes for claims 9-10 of the Roinestad2-Roinestad combination. Appx00101-00103. Rather than reconciling these inconsistencies, Ashworth simply ignored them in its Reply. *See* Appx00946-00947; Appx00953-00954.

Giving Ashworth another attempt to right this wrong, the Board tried to reconcile Ashworth's inconsistencies by repeatedly asking its counsel at the hearing which shapes it relied on for claims 9 and 10 under the Pupp-Roinestad combination. Appx01830-01833 (Tr. 25:6-28:24). Again, Ashworth pointed to different shapes for claims 9 and 10. *Id.* The Board explained to Ashworth that the structure that meets all the claim limitations "can't be two shapes at one time" and although "the modified device is a hypothetical," "it is still a thing, and we have to understand

what that shape is." Appx01832 (Tr. 27:16-22). Despite these repeated opportunities to clarify its argument, Ashworth failed to identify and apply the teachings of a drive tower shape in Roinestad to both claims 9 and 10 that could adequately and rationally support its obviousness theory. Appx01832 (Tr. 27:4-15). Ashworth made the same mistake for the Roinestad2-Roinestad combination by again relying on multiple drive tower shapes for the modified device for claim 9. Appx01837 (Tr. 32:5-13). Moreover, Ashworth's inconsistency continues on appeal. *See* Ashworth Br. 65-66 (acknowledging that the Board relied on the conical shape in Figure 1 to invalidate claim 9 and arguing that claim 10 is taught by the mixed conical-cylindrical shapes in Figures 11-12); *id.* at 69-70.

Accordingly, the Board correctly determined that Ashworth failed to prove claim 10 obvious over Pupp and Roinestad and claims 9 and 10 obvious over Roinestad2 and Roinestad. The Court should therefore reject Ashworth's arguments on claim 9 and affirm the Board's determination on claim 10.

## VIII. CONCLUSION

For these reasons, the Court should reverse the Board's decision of unpatentability of claims 9 and 11-13 of the '388 patent and claims 1-4 of the '645 patent or vacate and remand for further proceedings. The Court should affirm the Board's decision that Ashworth failed to prove claim 10 of the '388 patent obvious.

Dated: July 20, 2022

Respectfully submitted,

/s/ Lauren J. Dreyer
Lauren J. Dreyer
Principal Attorney
Baker Botts L.L.P.
700 K Street, NW
Washington, D.C. 20001-5692
Telephone: (202) 639-7823
Facsimile: (202) 639-1153
lauren.dreyer@bakerbotts.com

Michael Hawes
Jennifer Carter
Lori Ding
Baker Botts L.L.P.
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1705
Facsimile: (713) 229-7705
Michael.hawes@bakerbotts.com
Jennifer.carter@bakerbotts.com
Lori.ding@bakerbotts.com

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-1044, 2022-1045, 2022-1084

**Short Case Caption:** Laitram, LLC v. Ashworth Bros., Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 12068 words.

- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.

- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 07/20/2022

Signature: /s/ Lauren Dreyer

Name: Lauren Dreyer

Save for Filing